869 So.2d 242 (2004)
Cynthia CRAIGE
v.
Larry BROOME.
No. 2003-CA-0255.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 2004.
Robert G. Harvey, Sr., Maria Del Carmen Calvo, Law Offices of Robert G. Harvey, APLC, New Orleans, LA, for Plaintiff/Appellee.
Lawrence Galle, New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge JAMES F. McKAY, III, Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.).
MAX N. TOBIAS, JR., Judge.
On 13 January 2000, Cynthia Craige ("Craige"), the plaintiff/appellee, filed a petition for damages against attorney Larry Broome ("Broome"), in which she alleged that he assaulted her on 18 March 1999 when she questioned his proposed fee for legal services. On 10 November 2000, Broome filed his answer in which he denied Craige's claims and in reconvention alleged that she was sent to his office for political reasons to perpetuate a fraud that would result in his embarrassment.
*243 On 1 July 2002, the case was tried. On 26 August 2002, the trial court signed a judgment in favor of Craige and against Broome awarding her $480.00 in lost wages, $1,725.00 in medical expenses, and $15,000.00 in general damages. The trial court provided written reasons for the judgment in which it found the testimony of Broome and his witnesses unworthy of belief. This devolutive appeal followed.
The trial court's reasons for judgment included the following findings of fact:
On 18 March 1999, Craige inadvertently entered the law office of Broome while looking for another attorney's office. She described her legal issue to Broome to see if he would be interested in helping her and asked him what he would charge. When Craige questioned the quoted fee, Broome became irate and pulled Craige's chair out from under her, causing her to hit her head on the desk and fall to the floor. Broome then grabbed her by the neck, choked her, and hit her against the wall.
Catina Marie Williams ("Williams"), Broome's secretary at the time of the assault, testified that she did not know Craige before the incident. Williams testified that Craige entered the law office asking for another attorney and that Broome, who was also in the room, advised her that the attorney was located a couple of blocks up the street and left the room. Williams testified that Craige asked her if Broome would look at her case, since she was already in his office. Williams relayed the request to Broome, who stated that in return for $500.00, he would take Craige's case. Williams relayed Broome's proposed fee to Craige, who asked how Broome could set a fee without even hearing about the case. Williams related this question to Broome, who became irate and returned to the room with Craige. Williams testified that Broome stated the following to Craige: "Bitch, I don't know who you are, or where you came from, just get the heck out of my office." Williams testified that Craige responded: "A man in your profession, talking to me like this? All I asked you was how could you give me a price, and you don't know what my case is. * * * I'm going to get out of your office, but may God help you!" At that point, Williams testified, Broome rushed up to Craige and pulled her chair out from under her, causing her to hit her head on Williams' desk as she fell to the floor. Craige was crying as she stood up. Broome then slammed Craige's head against the wall hard enough to leave an imprint from her makeup. Williams testified that the police came to the scene and took her statement and that she quit her employment the same day; she had worked for Broome for two years at that point.
Craige testified to the same facts as Williams, with the addition of the following details. She testified that she worked as a dialysis technician. The name of the attorney she was looking for was Henry Julian. Broome stated the following when he reentered the room after Craige questioned his proposed fee: "Look black bitch, I don't need your money, just get the hell out of my office." Craige testified that Broome then grabbed the leg of the chair she was sitting in and pulled it, flipping her over and causing her to hit her head on Williams' desk. She was crying and trying to grab the phone to call the police when Broome grabbed her neck and shoved her against the wall. The police came and took her statement.
Craige also testified that she went to her doctor the next day for neck, shoulder, and leg pain. She testified that she received physical therapy for four months and continues to have neck, arm, and shoulder pain, which will probably persist the rest *244 of her life. Craige provided medical bills to substantiate her claims of injury and the cost of her treatment. She also testified that she missed three days of work, which amounted to $480.00 in lost wages. Craige provided payroll documents to substantiate her lost wages.
Several witnesses testified on behalf of Broome. Patricia Ann Anderson ("Anderson") testified that she was a client of Broome. Anderson testified that prior to the 18 March 1999 incident, Williams introduced her to Craige outside Broome's office. Anderson also testified that in May or June 1999, she spoke with Williams at a bus stop, and Williams, while laughing, told her about the 18 March 1999 incident and stated: "They got Larry. * * * We got him". On redirect, Anderson clarified that Williams told her that Mr. Broome and Mrs. Craige were in a fight and that Ms. Williams reminded her that she had met Craige outside Broome's law office before the incident.
Broome's testimony was contradictory to that of Craige and Williams. He testified that when Craige initially entered his law office looking for another attorney, he told her he thought the attorney was located down the street; and he allowed her to use the yellow pages to find the exact address. Broome returned to his inner office. When Williams relayed Craige's request that he take a look at her case, he responded that he was not interested in a case from a fellow attorney. Williams relayed Broome's message to Craige and returned to Broome's inner office with a repeated request from Craige that he speak with her about her case. Again, Broome instructed Williams to tell Craige that he was not interested and was too busy to take the case. When Williams returned to his office a third time with the same request from Craige, Broome went out to talk to Craige. At that point, Broome testified, Craige sat in a chair and refused to leave the office until he agreed to take her case. Broome then told Craige that she should leave; Craige, however, began screaming and fell out of the chair, which she then threw across the room. Broome denied yelling at Craige or calling her names; he also denied physically touching or harming her in any way. Furthermore, he described himself as handicapped to the point of walking with a limp and being unable to dump Craige out of the chair by lifting the leg of the chair.
On appeal, Broome argues that the evidence the trial court relied on to find in Craige's favor was the result of a conspiracy against him and that the alleged assault was staged. He also argues that the monetary judgment should be set aside because no medical evidence was presented at trial and the monetary judgment was the result of further fraud.
Craige argues that the trial court ruling was supported by the evidence and testimony and that the award of medical expenses, lost wages, and general damages was commensurate with her injuries.
In Harvey v. Cole, XXXX-XXXX, p. 3-4 (La.App. 4th Cir.1/23/02), 808 So.2d 771, 775-776, this Court stated:
The standard of appellate review of a trial court's findings of facts was enunciated in Mistich v. Volkswagen of Germany, Inc., 95-0939, pp. 4-5 (La.1/29/96), 666 So.2d 1073, 1077, as follows:
It is a well settled principle that an appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. *245 ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly wrong. Rosell, supra at 845; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra at 1333. Where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra at 844. The reviewing court must always keep in mind that if a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La. 1990).
For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder's conclusions were reasonable. Stobart, supra at 883; Theriot v. Lasseigne, 640 So.2d 1305 (La.1994).
Accordingly, unless this court finds that the trial court's factual findings were clearly erroneous, the trial court's judgment must be affirmed.
The evidence in the record supports the trial court's findings of fact and the resulting judgment in favor of Craige. Craige and Williams testified consistently regarding the progression of events on 18 March 1999. Although Broome testified contrarily, the trial court specifically found his testimony, along with that of his witness, unworthy of belief. The trial court's conclusions were clearly based on the credibility of the witnesses. Based on our review of the entire record, we find that the trial court's findings of fact are consistent with the evidence and the testimony presented at trial. Thus, we find nothing in the record to indicate that the trial court's findings of fact are clearly wrong or manifestly erroneous.

DAMAGES
In Harvey v. Cole, supra at 13 808 So.2d at 781, this Court stated:
In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), our Supreme Court set forth the standard of review of general damage awards as follows:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the *246 particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
While we must defer to the great, even vast discretion of the trier of fact in the assessment of general damages, the manifest error standard controls on the issue of the assessment of special damages. Johnson v. State Through Department of Public Safety and Corrections, 95-0003 (La.App. 1 Cir. 10/6/95), 671 So.2d 454.
Craige provided testimony and medical bills in support of her claim of physical injury and the cost of her treatment. Craige also testified and provided payroll forms to substantiate her claim of lost wages. The trial court's award of special damages is consistent with the evidence in the record, and we find no manifest error in the awards for special damages.
The trial court awarded $15,000.00 to Craige in general damages. This award is not unreasonable based on the facts of this case, and we find no abuse of discretion.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.