889 So.2d 1115 (2004)
Betty WRIGHT and Clifford Wright
v.
GENERAL AVIATION COMPANY, Geoffrey Campbell and His Unknown Insurance Company, ABC Insurance Company.
No. 04-CA-772.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*1116 Fred R. Defrancesch, LaPlace, LA, for Appellants, Betty and Clifford Wright.
Leo R. McAloon, III Kenneth H. Laborde, New Orleans, LA, for Appellees, General Aviation Company and Geoffrey Campbell.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
In this personal injury lawsuit, after a bench trial, the trial judge found in favor of plaintiff and awarded general and special medical damages. On appeal, plaintiffs, Clifford and Betty Wright, aver that the trial court's award was abusively low and ask this Court to award damages "in upwards of the $50,000 jurisdictional limit *1117 set prior to trial." For the following reasons, we amend the trial court's judgment and affirm as amended.
On the evening of July 8, 1997, defendant, Geoffrey Campbell, was employed by co-defendant, General Aviation Corporation ("General Aviation"), driving a fuel delivery truck owned by General Aviation. While attempting to navigate a turn from East Access Road onto Middle Access Road in Kenner, Louisiana, Campbell backed into the vehicle being driven by plaintiff, Clifford Wright.
On November 9, 2000, plaintiff filed the instant lawsuit against Geoffrey Campbell, his liability insurer, and General Aviation Corporation. The matter proceeded to trial on July 17, 2002. After taking the matter under advisement and reviewing post-trial memoranda, the trial judge issued judgment on February 21, 2003 in favor of Clifford Wright and awarded general damages of $6,000.00 and special damages of $2,530.00. On March 10, 2003, plaintiffs filed a devolutive appeal.
At trial, Wright testified that, since 1991, he has had one on-the-job injury and five automobile accidents, including the accident that is the subject of this litigation. Regarding his on-the-job injury,[1] Wright was injured, while he was working for a moving company, when an empty filing cabinet "tipped over" and hit him on the head. He received immediate medical treatment. He was out of work for two weeks with pay as a result of his injury.
In 1991, while Wright was in Dallas, Texas, he was stopped at a stop sign or street light and a person driving a Ford Explorer backed into his Ford Mustang. He sustained a knee injury and property damage and received compensation for his damages.
In 1994 or 1995, Wright was involved in another automobile accident when he turned in front of an oncoming vehicle on Airline Highway. The oncoming Dodge Caravan, which was traveling between 30 and 40 miles per hour, broadsided Wright's vehicle. He testified that he did not receive injuries in that accident.
In his third accident, Wright testified that he was driving a fuel truck on the highway to Venice, Louisiana when another vehicle swerved and struck the fuel truck. According to his testimony, the fuel truck was totaled. Wright did not state whether he received injuries in that accident.
On July 8, 1997, Wright was in his fourth accident, which is the subject of this litigation. Wright testified that a General Aviation fuel truck was stopped at a stop sign on East Access Road. After Wright pulled up behind the truck, the driver "threw it in reverse and ... headed back" then "hit [my vehicle] all of a sudden" and "pushed [my vehicle] back about 10 to 15 feet." Wright testified that he saw the truck's reverse lights but he accidentally put his vehicle in park and was unable to get out of the way. Wright testified that, when the collision occurred, his "neck hit the headrest" and his "shoulder hit the back of the seat."
Wright agreed with the police report that the fuel truck was not traveling more than 5 miles per hour when the collision occurred. He stated that, after the accident, he and the truck driver moved the vehicles to General Aviation's building, which was nearby. That night, they spent about two hours waiting for the police and handling the paperwork regarding the accident. Wright stated that he felt pain in his back on his way home that night, which *1118 was about two or three hours after the accident. According to Wright, he did not miss work because of this accident and did not make a claim for lost wages.
Wright stated that he did feel pain the day after the accident so he sought medical treatment. He was referred to Dr. Dale, a chiropractor, and saw him on July 10, 1997. Wright saw Dr. Dale approximately ten times between this accident and December 9, 1997.
On December 8, 1997, Wright underwent an MRI, which was ordered by Dr. Dale. According to Dr. Daniel Johnson, the radiologist that read the MRI, the MRI of Wright's cervical spine revealed "a slender posterior and downward subligamentous herniation" at the C4-5 disc space and slight posterior bulging at C5-6 disc. Wright's lumbar MRI was within normal limits. According to Wright, Dr. Dale told him that he had "disc damage" and referred Wright to Dr. Stuart Phillips, an orthopedist.
In lieu of live testimony, plaintiffs submitted Dr. Phillips' deposition into evidence. Defendants stipulated that Dr. Phillips was an expert in orthopedic surgery. Dr. Phillips testified that he first examined Wright on February 12, 1998, almost seven months after the accident. During the physical examination, Dr. Phillips found a positive Adson sign and flattening of the cervical curve, which are objective signs of deep muscle spasm, an indicator of cervical spine injury. Wright also complained of pain and numbness in his neck, upper back, and lower back. After reviewing Wright's cervical spine MRI, Dr. Phillips opined that Wright had suffered a "disc herniation at C6-7," which was "asymptomatic." Dr. Phillips prescribed pain medication, muscle relaxers, and sleeping medication.
On Wright's fourth visit, which was on September 17, 1998, Dr. Phillips observed that Wright still had muscle spasm in his neck but that Wright had reached the "steady state." Dr. Phillips believed that Wright was experiencing a "20% loss of function of the body as a whole" but Dr. Phillips did not believe that Wright was a candidate for surgery on that date. On that visit, as on the previous three visits, Dr. Phillips refilled pain medication and muscle relaxers. According to Dr. Phillips, Wright was restricted from work at that point. Later in his deposition, Dr. Phillips stated, however, that he "did not restrict him from any activity."
On March 25, 1999, when Wright returned for his sixth visit with Dr. Phillips, Wright was still experiencing pain so Dr. Phillips refilled his prescriptions. Dr. Phillips also stated that Wright had returned to work. At this point, Dr. Phillips found that Wright did not exhibit any neurological symptoms. Wright continued to visit Dr. Phillips regularly until July 16, 2001. Wright's complaints continued to be pain, which increased with activity, with an "occasional flare-up" of acute pain. Wright had conveyed to Dr. Phillips that on bad days, he had to take time off of work but, on "good days," he can "do most everything."
Dr. Phillips opined that Wright's neck injury was caused by the accident in question "given the history that the patient gave to me." Dr. Phillips acknowledged that Wright had not informed him that he had an on-the-job injury and three previous automobile accidents. Dr. Phillips stated, "Certainly, my decision to base the causation on the fuel truck incident is with the history that I have ..., the history is incorrect. And you'd have to go back and check it again."
On August 29, 2000, Wright had his fifth automobile accident. He was traveling approximately 25 miles per hour when he rear-ended a truck on Airline Drive in Kenner. Wright testified that he was not *1119 injured in that accident but that he was still suffering from injuries from his 1998 accident.
At trial, Wright testified that he has pain in his neck, shoulders, and back every day. He testified that he cannot participate in activities, like playing basketball or playing with his kids, that he enjoyed before this accident. He also stated that his marital relationship suffered after the accident. He admitted that he continued to work immediately after the accident and did not claim lost wages subsequent to this accident. He also stated that he has voluntarily changed jobs to receive higher wages twice since his 1997 accident.
Wright testified that, for more than two years, Dr. Phillips treated him for "back and neck pain" with pain medication and muscle relaxers. Wright stated that, at the time of trial, he had not seen Dr. Phillips in over a year because Wright would not undergo surgery and Dr. Phillips could not do "anything more" for him. Finally, he admitted that he does not plan to undergo surgery at this time.
Defendants presented testimony from Dr. Robert Steiner, who plaintiffs stipulated was an expert in orthopedic surgery. Dr. Steiner performed an independent medical evaluation on Wright on November 30, 1998. On that date, Wright complained of recurrent neck pain, headaches, and lower back pain. On examination, Dr. Steiner did not find spasm in Wright's cervical or lumbar spine. Further, x-rays of Wright's cervical and lumbar spine were normal. In conjunction with his evaluation of Wright, Dr. Steiner reviewed Dr. Johnson's MRI reports and medical records from Dr. Dale and Dr. Phillips.
In Dr. Steiner's opinion, Wright "did not have any clinical findings of a herniated cervical disc syndrome; in other words, he had a normal neurologic exam. There was nothing on his physical exam, his MRIs, or his x-rays to indicate a need for neck surgery." Dr. Steiner also opined "that sufficient time had passed for soft tissue injuries to have healed following the type of accident he described and that he did not have any physical findings or diagnostic findings that would prevent him from returning to work as a dump truck driver."
Dr. Steiner examined Wright again in November of 2000. At that time, Dr. Steiner's physical examination of Wright's cervical spine revealed satisfactory range of active motion with no spasm, which was within normal limits. Further, x-rays of Wright's cervical spine taken that day were within normal limits according to Dr. Steiner.
On appeal, plaintiffs assert that the trial judge "clearly erred" by awarding plaintiffs damages totaling $8,530.00 where there was sufficient evidence to support a finding that Mr. Wright suffered a herniated disc, which has caused him substantial pain and limited his social, familial, and conjugal relations. Plaintiffs argue that the trial court erred in quantum on both general and special damages and seek "upwards of the $50,000 jurisdictional limit set prior to trial."
First, plaintiffs also argue that the trial court erred in awarding $6,000.00 in general damages where the plaintiff has a herniated disc. In the assessment of damages in cases of offenses and quasi offenses, much discretion must be left to the judge or jury. La.C.C. art. 2324.1. Absent a determination that the trial court's very great discretion in the award of general damages has been abused in the matter under review, the reviewing court should not disturb the trier's award. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the *1120 award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff on the particular circumstances, that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Here, the trier of fact apparently concluded that Wright's neck injury was either caused or aggravated by the 1997 accident. That determination is supported by the record: Dr. Johnson saw a herniation at the C4-5 level in the 1997 MRI study; Dr. Phillips saw a herniation at the C6-7 level in the 1997 MRI study; and Wright reported pain in his neck and shoulders.
At trial, Wright reported that he does not enjoy playing basketball and playing with his kids like he did before the 1997 accident. He reported that his marital relationship has been adversely affected. He has, however, continued to work and even obtained employment with higher wages. His orthopedist does not consider him to be a candidate for surgery at this time. Further, he discontinued treatment with Dr. Dale in 1997 and Dr. Phillips in 2001.
After review, we find no manifest error in the trial court's determination. Nor do we do find the award is less than a reasonable trier of fact could assess for the effects of this particular injury to this particular plaintiff under these particular circumstances, so as to warrant an increase or decrease in the award. See, Youn, 623 So.2d at 1261; Hebert v. Old Republic Ins. Co., 01-355, p. 17 (La.App. 5 Cir. 1/29/02), 807 So.2d 1114, 1127.
Next, plaintiffs contend that the trial court erred in quantum of special damages awarded. In this case, the trial judge awarded Wright special damages of $2,530.00. At trial, plaintiffs introduced, and defendants stipulated to, evidence of medical expenses incurred by the plaintiff and property damage to plaintiffs' vehicle. The medical expenses, which totaled $9,139.72, were for MRIs, prescriptions, and treatment by Dr. Dale and Dr. Phillips. The property damage expenses, which totaled $928.85, were for repairs to his vehicle.
Special damages, unlike general damages, are susceptible of being established with reasonable mathematical certainty. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. To recover medical expenses, whether past or future, a plaintiff must show, through medical testimony, both the existence of the injury and a causal connection between the injuries and the incident of which plaintiff complained. Rhodes v. State, DOTD, 94-1758 (La.App. 1 Cir.1996), 684 So.2d 1134, writ denied, 97-0242 (La.2/7/97), 688 So.2d 487.
"[T]he manifest error standard controls on the issue of the assessment of special damages. Johnson v. State Through Department of Public Safety and Corrections, 95-0003 (La.App. 1 Cir. 10/6/95), 671 So.2d 454." Craige v. Broome, 03-0255 (La.App. 4 Cir. 2/25/04), 869 So.2d 242, 246. Given the evidence with regard to special damages, it appears that the trial judge did err manifestly in its award of special damages. As a result, this court must determine the appropriate amount of special damages from a de novo review of the record. Bennett v. State Farm Ins. Co., 03-1195 (La.App. 3 Cir. 3/24/04), 869 So.2d 321.
As we have noted, the trier of fact apparently concluded that Wright's injury was either caused or aggravated by the 1997 accident. Further, defendants stipulated to the evidence of medical expenses and property damage introduced by plaintiffs. In the absence of countervailing evidence or an attempt to impeach the plaintiffs' *1121 testimony, the evidence presented by the plaintiff adequately proved his claims for special damages. We conclude, therefore, that the trial judge erred in failing to award the proven medical expenses and property damages. We find that the record would justify an award of special damages of $10,068.57 for Clifford Wright.
In conclusion, we affirm the trial court's award with respect to general damages and amend with respect to special damages to increase the award to $10,068.57. Defendants-appellees are to pay the costs of appeal.
AFFIRMED AS AMENDED.
NOTES
[1] Wright was unclear as to the date of the injury but it appears from the record that the injury occurred sometime after 1990.