987 So.2d 879 (2008)
Christopher P. ADAMS and Lorri P. Adams
v.
Leo Jerome KERN, CPA.
No. 08-CA-140.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2008.
Rehearing Denied July 21, 2008.
*880 Kenneth C. Fonte, The Law Offices of Golden & Fonte, Metairie, LA, for Plaintiffs/Appellees.
David L. Browne, Law Offices of David L. Browne, L.L.C., New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
DUFRESNE, Chief Judge.
This is an accounting malpractice suit brought against defendant/appellant, Leo Kern ("Kern"), who was the certified public account for three LLCs in which plaintiff/appellee, Christopher Adams ("Adams"), had been a member. The basis of the claim against Kern is an assertion that he undervalued Adams' interest in those LLCs after Adams had been expelled by other members of the LLCs for cause. Plaintiffs filed a request with the Society of Louisiana Certified Public Accountants to review the malpractice claims against defendant in accordance with the provisions of LSA-R.S. 37:102.[1] The review *881 panel rendered a decision in favor of plaintiffs, finding that defendant failed to conform to the standard of care required of a certified public accountant ("CPA") in the performance of business valuations. However, the panel also stated that it was "unable to determine the amount of damages and/or loss that was incurred by claimants, Christopher P. Adams and Lorri P. Adams."
Subsequently, Adams and his wife filed this action in accountant malpractice in the trial court. Kern filed a motion for summary judgment, which was denied. The matter went to a jury trial, after which judgment was rendered in accordance with the jury verdict. That judgment was in favor of plaintiffs and against Kern for a total amount of $987,088. Kern filed motions for judgment notwithstanding the verdict, new trial, or in the alternative, for remittitur. Those motions were denied and an appeal from the substantive judgment was taken.
Adams was a member of three LLCs  ABJP Investments, LLC ("ABJP"), JRCC Investments, LLC ("JRCC"), and JOB Investments, LLC ("JOB"). All of the LLCs also included three other members, Clyde J. Philips III, Ronald H. Bordelon, and James L. O'Brien ("O'Brien"). The purpose of the LLCs was to purchase apartment buildings, some of which were to be developed into condominiums.
On August 7, 2001, Adams was removed from the LLCs for cause by the other partners. Kern, as the CPA for the LLCs, was given the task of setting a value on each company to establish the amount due Adams for his 25 percent share. Kern issued an original and a revised valuation of the companies. In Kern's valuation, he reported a value of $9,600,000 for JOB, $3,200,000 for ABJP and $8,400,000 for JRCC before liabilities. The valuations of all three companies were combined into one report. Thus, after Kern's classifications of certain items on the balance sheets of each company, and the consideration of liabilities, Adams was paid $125,000 for his share of ABJP and nothing for his share in either JOB or JRCC.
Adams took issue with the valuation and filed a malpractice complaint with the accountant review panel. Among those complaints are the allegations that Kern valued the three companies as one entity in violation of the operating agreement, that he failed to verify the completeness, accuracy or reliability of information provided to him by the managing members of the LLCs, and that he reclassified capital contributions by O'Brien as a debt to reduce the value of the businesses.
The review panel considered the complaints and determined that Kern committed malpractice by failing to conform to the appropriate standard of care required of a CPA in the performance of business valuations with respect to his work on ABJP, JRCC, and JOB. Specifically, the panel found a conflict of interest that was not waived, a failure to verify the completeness, accuracy, or reliability of the information given to him by the remaining members of the LLCs, and a failure to conform to the standard of care by combining the value of all entities into a combined statement. While the panel found that Kern failed to conform to the appropriate standard of care in the valuation, it did not have sufficient evidence to determine the amount of damages that resulted from that breach of the standard of care.
In his valuation report, Kern used values provided to him by Larry G. Schedler *882 & Associates, Inc. ("Schedler report"). Kern admitted to the review panel that he did not verify the accuracy or completeness of this information. That use of the Schedler report without verification supported one of the findings of professional malpractice. Kern's report also states that he used the highest of the earned income approach or the acquisition value paid in at the time of purchase to determine the value. For valuation purposes, Kern broke the report down into three parts made by grouping certain apartment complexes. However, those parts did not correspond to the three separate LLCs. That failure to value each company separately was also found to be professional malpractice by the review panel.
Kenneth Pailet ("Pailet"), a CPA and a member of the review panel, testified at trial. He stated that the panel found professional malpractice upon review of Kern's valuation. Specifically, Kern admitted to the panel that he did not verify the completeness, accuracy, or reliability of the information provided to him by the remaining partners of the LLCs in the form of the Schedler report. Kern further admitted that he used this data to value the companies. According to Pailet, it is a violation of the professional standards of the American Institute of CPAs to use unverified information. Pailet explained that a CPA is supposed to use "professional skepticism," and verify information supplied for completeness and accuracy. Pailet discussed items in the valuation report taken from the Schedler report given to Kern such as, effective gross income, stabilized income, current vacancy rate, and other income. One item deducted from the value was $1,500,000 for improvements. That figure was used in the valuation because it was reported to Kern that the apartments had reached stabilized income and the additional amount would need to be spent to increase the property's potential. Pailet also testified that, even using the Schedler report's figures and the accounting options, there would be a difference of $554,826 in value in JOB alone.
Pailet also pointed out a $45,600 presumption of reserve for each apartment presented in the Shedler report. However, according to the financial statements, the company is expensing all of the maintenance and repairs of each apartment complex, so it is not reasonable to use a 3 percent reserve, if everything is being expensed on an annual basis. Correction of that calculation would add another $450,000 of value. Pailet also disagreed with the use of a management fee of 3 percent That should have been verified since there seems to be no evidence in the LLCs' financial reports that a management fee was paid. That would add $540,140 to the value.
Ultimately, Pailet testified that checking the information provided in the Schedler report and valuing the property at the higher of the two criteria set forth in the Kern report, the malpractice affected Adams anywhere from $538,706 to as much as $1,185,241 on the valuation of JOB. Using the same formulas and analysis, Pailet estimated Adams' loss for the incorrect valuation of JRCC at about $287,982.
One main issue in the valuation of the JRCC and JOB is the classification of the funds contributed by O'Brien. Kern, who prepared all financial documents and tax returns for the LLCs since their inception, testified that the funds contributed by O'Brien had always been classified as capital contributions which are considered equity in the companies. In the valuation performed to determine the value of Adams' interest in the companies, Kern classified these funds as loans which are considered a liability of the companies. *883 Kern testified that this failure to classify the funds advanced by O'Brien as a debt on the financial statements and tax returns was error, so he prepared revised valuations. However, Kern did not amend the LLC tax returns to reflect the change in classification of the funds. In fact, the O'Brien funds remained classified as equity for several months following the second valuation performed to determine the value of Adams' ownership. Specifically, on pages four and five of the valuation performed on August 13, 2001, admitted into evidence as plaintiffs' exhibit one, which classifies the O'Brien funds as capital contributions, Adams is entitled to $625,000 for his 25 percent interest in JRCC and JOB. In Kern's revised valuation, classifying the O'Brien funds as liabilities, the value of JRCC and JOB is zero, resulting in Adams receiving only $125,000 for his 25 percent ownership of ABJP.
Plaintiffs' expert, Pailet, testified that it was improper for Kern to alter his valuation of the LLCs based on his own reclassification and converting equity to liability. Given Kern's initial valuation, the jury had a basis to find that Adams was damaged in the amount of $625,000 by Kern's malpractice.
Pailet testified that the classification of O'Brien's advancement to the companies as a loan or liability caused JOB to be thinly capitalized and caused JRCC to have negative capital. These facts should have alerted Kern to get documentation to make sure the amount was properly classified as a liability, rather than capitalization.
Paliet explained that the absence of promissory notes or written contracts showing a determinable interest rate would be factors to consider when deciding how to classify the advance. Generally, thinner or inadequate capitalization would tend to indicate that the transaction should be classified as a capital contribution rather than a debt. Further, Pailet testified that he reviewed the monthly financial reports of the LLCs and there were no interest payments listed. It appeared to Paliet that the capital contribution made by O'Brien was used as down payment on property purchased. Ordinarily, a borrower must sign a statement to verify that none of the down payment was borrowed. After reviewing all of the financial reports, Paliet testified that, in his professional opinion, the advances made to the companies by O'Brien should have been classified as a capital contribution, not a debt.
Further, Paliet testified that, just viewing the valuation from a seller's point of view in the fair market value approach to valuation, the valuations of two of the companies below zero does not make sense. Paliet stated that coming up with a valuation that drops below zero when the main asset is real estate assumes a willing seller would happily just give away his property. That fact alone should have given Kern pause to check the figures in the Schedler report.
In brief to this Court, Kern does not contest the jury finding that he breached the standard of care. Rather, he argues that the breach was not a cause in fact of Adams' damage. Further, Kern argues that the jury's finding of actual damages is manifestly erroneous and clearly wrong.
It is well established that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." There is a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that *884 the finding is clearly wrong (manifestly erroneous). Earls v. McDowell, 07-17 (La. App. 5 Cir. 5/15/07), 960 So.2d 242 (citing Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993)). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id.
Since Kern's argument does not include a suggestion that the finding of malpractice was in error, we will not discuss that issue. As to the jury's finding that Kern's malpractice was a cause in fact of Adams' damage, we find no error when applying the above standard of review. Pailet's testimony and supporting documentation is sufficient to find that the jury's conclusion that Kern's undervaluation of the companies caused Adams to receive less than he was due for his 25 percent share in the three LLCs is reasonable. These three LLCs were undervalued by a significant amount, and that undervaluation caused Adams to receive far less for his 25 percent share in the LLCs.
We are not persuaded by Kern's argument that no damages were supported because the review panel did not assess damages. The role of the review panel is only to decide if the evidence presented was sufficient to support the conclusion that Kern failed to meet the applicable standard of care as charged in the complaint. LSA-R.S. 37:119. The factual determination of whether damages were sustained by the plaintiff and, if so, to what extent are issues for the jury to decide. Further, we note that, while the opinion of the review panel is admissible as evidence in any subsequent action, it is not conclusive. LSA-R.S. 37:120.
Because we find no error in the factual findings of the jury regarding the malpractice, or its relationship to the damages, we find the trial court was correct in denying Kern's motions for summary judgment and judgment notwithstanding the verdict.
Additionally, Kern argues that the trial court should have granted his motions for summary judgment, judgment notwithstanding the verdict or in the alternative for remittitur. For reasons already set forth in this opinion, the motion for summary judgment was properly denied. Kern was not entitled to a judgment by law before a trial on the merits.
A judgment notwithstanding the verdict is properly granted "only when the facts and inferences are so strongly and overwhelmingly in favor of one party that the trial judge believes reasonable men could not have arrived at a contrary verdict." Adams v. Security Ins. Co. of Hartford, 543 So.2d 480, 486 (La.1989); Kistner v. King, 98-641 (La.App. 5 Cir. 12/16/98), 726 So.2d 68. Thus, if the jury's verdict is a reasonable one, given the facts of the case, the granting of a judgment notwithstanding the verdict is proper. The trial court may not reweigh the evidence. Kistner v. King, supra. The trial court found that Kern did not meet this burden of proof and properly denied the motion. We find no error in that ruling.
We do find the defense motion for remittitur was well founded, and should have been granted. We are well aware of the great discretion afforded a general damage award made by a jury. Such an award may be disturbed only after an articulated analysis of the facts reveals an abuse of discretion. Bouquet v. WalMart Stores, Inc., 08-0309 (La.4/4/08), 979 So.2d 456, reh'g denied, XXXX-XXXX (La.5/9/08, 980 So.2d 679). However, special damages, unlike general damages, are susceptible of being established with reasonable mathematical certainty. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. The manifest error standard, *885 rather than the abuse of discretion standard, controls on the issue of the assessment of special damages. Wright v. Gen. Aviation Co., 04-772 (La.App. 5 Cir. 11/30/04), 889 So.2d 1115.
Recently, our Louisiana Supreme Court has set forth a two-part test for review of an award of special damages. In Kaiser v. Hardin, 2006-2092 (La.4/11/07), 953 So.2d 802, the Court explained:
Special damages are those which have a "ready market value," such that the amount of the damages theoretically may be determined with relative certainty, including medical expenses and lost wages. In reviewing a jury's factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: There must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong.
Id. at 810 (citations omitted).
Following the above standard of review, we find no reasonable factual basis for the jury's award, and that it is clearly wrong. The jury interrogatories only ask for an amount of damages. There is no explanation as to how the $987,088 figure was calculated, or any indication which testimony or documents were used in the calculation. Accordingly, we find the award of special damages in this case is sufficiently non-specific to make it manifestly erroneous and clearly wrong.
We believe the only specific damage proven with sufficient certainty by the plaintiffs is that the correct valuation of JRCC is $900,000 making plaintiffs' 25 percent interest worth $225,000 and the correct valuation of JOB is $1,600,000 making plaintiffs' 25 percent interest worth $400,000. Accordingly, we reduced the award of damages from $987,088 to $625,000, and we amend the judgment to reflect that reduction. In all other respects the judgment of the trial court is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] LSA-R.S. 37:102(A), in part, states that "(a)ll claims against certified public accountants or firms, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a public accountant review panel...."