# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-844

LENNIS BERNARD

VERSUS

CHRISTOPHER GUILBEAU, ET AL.

**************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NUMBER 2003-4413
HONORABLE JOHN D. TRAHAN, PRESIDING

**************

**SYLVIA R. COOKS**
**JUDGE**

**************

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

John Jefcoat
Galloway & Jefcoat, L.L.P.
P.O. Box 61550
Lafayette, Louisiana 70596-1550
(337) 984-8020
COUNSEL FOR PLAINTIFF/APPELLANT:
    Lennis Bernard


Timothy A. Maragos
John E. Ortego & Associates
Caffery Plaza, Suite 100
4023 Ambassador Caffery Pkwy
Lafayette, Louisiana 70503
(337) 988-7240
COUNSEL FOR DEFENDANTS/APPELLEES:
    Christopher Guilbeau,
    Dubroc Engineering, and
    State Farm Mutual Automobile Insurance Company

**COOKS, Judge.**

## STATEMENT OF THE FACTS

On August 19, 2002, Lennis Bernard was operating a 1993 Chrysler Concord automobile in the left lane on the Evangeline Thruway in Lafayette. Christopher Guilbeau was traveling in the same direction in the right lane in a Dodge truck owned by his employer, Dubroc Engineering, Inc., and insured by State Farm Mutual Automobile Insurance Company (State Farm). Mr. Guilbeau changed lanes and struck Mr. Bernard's automobile on the right side causing the air bag to deploy. Mr. Bernard sued Mr. Guilbeau, Dubroc Engineering, Inc. and State Farm. Liability was not in dispute and a jury trial was held on the issue of damages. The jury found in favor of Mr. Bernard and awarded $7,543.00 for past medical expenses, $17,500.00 for lost wages and $9,000.00 for pain and suffering. The jury did not award damages to Mr. Bernard for past or future medical expenses or general damages related to a hearing loss in his left ear. The jury apparently concluded the hearing loss was not related to the accident. Judgment was signed in accordance with the jury verdict. Mr. Bernard appeals, asserting the jury erred in failing to award damages for his hearing loss. For the reasons assigned below, we affirm the decision of the trial court.

## LAW AND DISCUSSION

Mr. Bernard contends the jury erred in finding that his hearing loss was not caused by the accident. The medical evidence consists of the testimony of Dr. John Sibille, a general practicioner, Dr. Phillip Noel, Mr. Bernard's treating ENT, Dr. James Soileau, the Defendant's ENT, and Dr. Erica Lee, a clinical audiologist. Although it appears Mr. Bernard does have a slight hearing deficit in his left ear with certain tones, the medical testimony is not conclusive that the loss was caused by the accident.

2

Dr. John Sibille testified he first saw Mr. Bernard on December 2, 2002, four months after the accident. Mr. Bernard had complaints of popping sounds coming from his left ear and nasal congestion. Dr. Sibille diagnosed an upper respiratory infection with bilateral serous effusion, or fluid behind the eardrums. Dr. Sibille saw Mr. Bernard a week later on December 9, 2002. He noted his eardrum was more prominent, easier to visualize, which indicated an early infection. On December 31, 2002, Mr. Bernard returned with the same symptoms. Dr. Sibille testified he prescribed a stronger, broader antibiotic to resolve the ear infection which Dr. Sibille concluded was secondary to Mr. Bernard's sinus infection. Mr. Bernard returned to Dr. Sibille on January 7, 2003. At that time, the ear infection had resolved. Dr. Sibille's office notes make no mention of any further ear problems. During the office visits to Dr. Sibille, Mr. Bernard made no mention of the fact that he was in an automobile accident in August 2002. Dr. Sibille testified he decided to refer Mr. Bernard to an ENT specialist because "I think on average he was more concerned, having a little more symptoms, coming back more often that I would see for this but, you know, that could just be his personality traits and not necessarily the ear, you know. . . I think in family practice it's kind of our style to go ahead and punt, to refer on to a specialist and get maybe a little more sophisticated evaluation." Dr. Sibille referred Mr. Bernard to Dr. Phillip Noel.

Dr. Noel first examined Mr. Bernard on January 14, 2003. Mr. Bernard related that he had been involved in an automobile accident and the air bag deployed in his face. Since that time he had a left-sided hearing loss and a feeling of a "stopped-up" ear, dizziness and popping in the left ear. Dr. Noel ordered a hearing test. The results indicated a mild sensory neural hearing loss in the left ear and no evidence of any middle ear fluid or ear pathology. In February, a second hearing test was performed

and the results were essentially the same. Dr. Noel prescribed an antihistamine and a steroid spray to remedy Mr. Bernard's complaints of ear popping. He also prescribed a brief course of an oral steroid to relieve the pressure sensation in his ear and to treat any inflammation which Dr. Noel concluded "may have played a role in his hearing loss." Dr. Noel referred Mr. Bernard to an audiologist. A letter from Audiology Associates indicates an ABR test, performed on March 9, 2003, was essentially normal for both ears. Dr. Noel testified a normal ABR test indicates the nerve paths are functioning but the problem may be with the inner ear itself. Dr. Noel next saw Mr. Bernard on April 29, 2003. At that time, he was still complaining of stuffiness, and congestion in his left ear which was unchanged since the last visit. Dr. Noel reviewed the results of the ABR test with Mr. Bernard and assured him the test was normal. Dr. Noel referred Mr. Bernard to an audiologist, stating:

> And at the time the discussion that we had was that my diagnosis at that time, having excluded more complex retrocochlear disease, was that he had had a sensory neural hearing loss that based on the history was likely due to acoustic trauma, and again, that if his hearing loss was of a degree that it was impairing his ability to function in a normal business environment or socially, that he may want to consider a hearing aid for rehabilitation of his hearing.

A hearing test performed in Dr. Noel's office on August 26, 2003, a year after the accident, indicated a worsening of his hearing in the low frequencies. Dr. Noel testified regarding the deterioration of his hearing, stating:

> That was a surprise to me because it was not altogether consistent with a traumatic injury in August 2002, you know, to almost a year later develop a drop in hearing at least as a continuation in the same process. And at that time he also reports some fluctuation in his hearing in that ear as well as some ringing that he had not complained of before as well as some equilibrium problems that he described as a swimming in the head and that was – And he told me at that time – and these were all new complaints. And he reports some fullness in that ear, and again, these – this disequilibrium and nausea lasting minutes. It was occurring once or twice a week. And when I saw that – when I heard those symptoms in conjunction with a low frequency hearing loss, my impression at that time that – and that I make note in my diagnosis is that there was a

possibly some element of hydrops or Meniere's Disease, which is a disease entity that's caused by we believe an increased pressure in the inner ear, and it can cause some transitory symptoms, transitory hearing loss, some vertigo.

Another hearing test performed on Mr. Bernard confirmed a persistent hearing loss in the low and high frequencies. Dr. Noel stated Mr. Bernard's low frequency loss was not accident related; however, the loss of hearing in the high frequency tones could have been caused by the accident. Dr. Noel further testified the ear infections could account for loss of hearing in the high frequencies. He admitted, however, he had never treated any one in his practice with traumatic hearing loss caused by an air bag. Dr. Noel saw Mr. Bernard for the last time in November 2003.

Dr. James Soileau saw Mr. Bernard on September 27, 2004 to conduct an independent medical examination. Dr. Soileau obtained a comprehensive medical history from Mr. Bernard including details regarding his complaints relating to the ear and dizziness. Then he performed a thorough examination of his ears, eye movement, and blood vessels, including an extensive battery of hearing and balance tests. Additionally, Dr. Soileau reviewed the medical records from the Sunset Clinic and Dr. Noel. It was Dr. Soileau's opinion Mr. Bernard had a "little mild high frequency loss in the left ear, probably compatible with the audiogram" performed in January 2003. He also testified the hearing loss initially noted in January and February 2003 was significantly different than the hearing loss which manifested later in 2004. Dr. Soileau elaborated:

> My testing did not validate the moderate to severe loss that Mr. Bernard was manifesting by pure tones. Because when we went back and did a number of procedures that do not require a voluntary response, our data set just didn't agree with what he was giving us in pure tones, but they did agree almost perfectly with the hearing tests that were obtained in January and February in Lafayette.

Dr. Soileau inferred the hearing tests subsequent to the January and February

5

2003 tests were dependent on subjective responses from Mr. Bernard. He also testified the audiologist "reported reliability as only fair." With regard to Mr. Bernard's hearing loss in the low frequencies, Dr. Soileau testified:

> I don't think this mild loss would be of much significance so far as how he functions on a daily basis. It's not something that – If you look at the disability scales, compensation scales, it comes out to 0 percent. Most of those scales don't start to pick up anything significant until the hearing loss is significantly below 25 decibels, and his losses were pretty much throughout the speech frequencies, which they're sort of wavey scales around 20 decibels. So I would call it a mild loss of mild significance.

Dr. Soileau stated it was a possibility that the mild hearing loss was caused by the accident but "in our experience, people who are going to have an air bag injury usually complain very early and very bitterly of the hearing loss and the vertigo. In other words, to go four months from onset – from injury, to complaint is just – just doesn't fit with our experience that these things present late on." In his opinion, the fact that Mr. Bernard's symptoms manifested later on indicates the air bag was probably not the cause of his mild hearing loss.

After hearing the testimony of the three physicians, the jury concluded the mild hearing loss Mr. Bernard suffered in his left hear was not related to the accident. In order to reverse the findings of a jury, an appellate court must find from the record that a reasonable factual basis does not exist for the finding or that the finding is clearly wrong. *Vaughn v. Progressive Sec. Ins. Co.*, 03-1105 (La.App. 3 Cir. 3/2/05), 896 So.2d 1207. While a treating physician is accorded more weight and probative value than that of a physician who has seen the injured party for purposes of rendering expert testimony concerning the party's condition, a treating physician's testimony is not irrefutable and the trier of fact must weigh the totality of the testimony. *Pereira v. Louisiana Coca-Cola Bottling Co.*, 620 So.2d 315 (La.App. 4 Cir.), *writ denied*, 629 So.2d 414 (La.1993); *Murchinson v. Lyndon Property Ins. Co.*,

6

04-933 (La.App. 3 Cir. 12/30/04), 896 So.2d 214, *writ denied*, 05-0274 (La. 5/13/04), 902 So.2d 1016. We have reviewed the medical testimony and find even Dr. Noel, the treating physician, was not conclusive as to whether the accident was the cause of Mr. Bernard's hearing loss. We find the jury had a reasonable factual basis to conclude Mr. Bernard's mild hearing impairment which manifested four months after the accident was not caused by the deployment of the air bag. Therefore, we affirm the judgment of the trial court.

## DECREE

Based on the foregoing review of the evidence, we affirm the decision of the trial court.

**AFFIRMED.**