# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**06-987**

THEODORE VENISSAT, ET AL.

VERSUS

ST. PAUL FIRE & MARINE INS. CO., ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 03-5880
HONORABLE R. RICHARD BRYANT, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Elizabeth A. Pickett, J. David Painter, James T. Genovese, Judges.

**PICKETT, J., DISSENTS.**

                                    **AFFIRMED AS AMENDED.**

> **Thomas John Gayle**
> **Ranier, Gayle & Elliot**
> **P. O. Box 1890**
> **Lake Charles, LA 70602-1890**
> **COUNSEL FOR:**
>     **Plaintiffs/Appellants - Theodore and Vera Venissat**
>
> **Todd M. Ammons**
> **Stockwell, Sievert, Viccellio, Clements & Shaddock**
> **P. O. Box 2900**
> **Lake Charles, LA 70602**
> **COUNSEL FOR:**
>     **Secondary Defendants/Appellants - St. Paul Fire & Marine Ins. Co.,**
>     **Calcasieu Parish Sheriff's Dept. and Charles Ferguson**

**THIBODEAUX, Chief Judge.**

Plaintiff, Theodore Venissat, was rear-ended by a sheriff's deputy, Charles Ferguson, while stopped at a traffic light. Mr. Venissat and his wife sued the deputy and his employer, the Calcasieu Parish Sheriff's Department (CPSD), as well as the CPSD's liability insurer, St. Paul Fire & Marine Insurance (St. Paul), for damages sustained as a result of the collision. The Venissats appeal the jury's special damage awards of $25,000 in past medical expenses, $8,000 in past lost wages, and the general damage award which totaled $45,000. Also, they contend that the trial court committed reversible, legal error when it rejected their request for a jury instruction that would allow the jury to consider whether the injured party was entitled to the presumption that the accident caused his injuries.

The defendants appeal the trial court's inclusion of St. Paul in the judgment rendered in favor of the plaintiffs. They assert that St. Paul's coverage is inapplicable in this case because the policy has a self-insured retention clause that requires the CPSD to pay for judgments or claims up to $250,000, which exceeds the total damage award of $83,000.

We find that the jury erred in rendering its awards of special damages and general damages; therefore, we amend the judgment to reflect past medical expenses in the amount of $75,000; past lost wages of $32,000; and the pain and suffering component of general damages in the amount of $60,000. The jury's awards of $5,000 for loss of enjoyment of life and $10,000 for mental anguish are affirmed. Therefore, the total general damage award is $75,000.

I.

**ISSUES**

1.  Did the trial court err when it rejected the plaintiffs' request for a *Housley v. Cerise* jury instruction,

regarding a presumption that the accident caused Mr. Venissat's cervical spine injuries, even though he had been diagnosed with pre-existing and occasionally symptomatic, cervical degenerative disc disease before the accident?

2. Were all of the plaintiff's post-accident medical expenses incurred for the treatment of accident-related injuries, therefore entitling him to an increase in the award for medical expenses?

3. Did the plaintiff establish that his entire claim for past lost wages consisted of wages lost as a result of accident-related injuries, therefore, entitling him to an increase in his past lost wage award?

4. Was the jury's general damage award of $45,000 abusively low, considering the plaintiff received almost three years of medical treatment and underwent a three-level discectomy after the accident?

5. Was St. Paul erroneously cast in judgment for the damages awarded to the plaintiffs since the CPSD's $250,000 self-insured retention provision of the St. Paul policy was not exceeded by the damage award?

## II.

## FACTUAL BACKGROUND

On November 1, 2002, sixty-eight year old plaintiff, Theodore Venissat, was rear-ended by Deputy Charles Ferguson's patrol car as he sat in his stopped vehicle at a red traffic light. Mr. Venissat refused treatment at the scene, but sought medical treatment a few days later for the overall body soreness and pain in his neck and shoulders that manifested in the immediate days following the accident. For approximately the next four months, his family physician, Dr. Kevin Schlamp, treated him conservatively with pain medication, anti-inflammatory medication, and physical therapy for a perceived neck sprain and/or strain.

2

Because his symptoms continued to recur, on April 7, 2003, Dr. Schlamp ordered an MRI to further investigate the source of his problems. The MRI showed that a herniated disc was protruding into the spinal canal at the C4-5 level. Dr. Schlamp also viewed deterioration in the cervical spine, which he attributed to degenerative disc disease, at the C5-6 and C6-7 levels. Dr. Schlamp had previously diagnosed this degenerative disc disease with arthritic changes in 1996, at which time he also first noted complaints from Mr. Venissat of symptoms that were suggestive of a possible cervical disc herniation. It was not until the MRI was taken in 2003, however, that he objectively determined the existence of a disc herniation at C4-5. He also opined at that time that the herniation was caused by the 2002 rear-end collision. Dr. Schlamp referred Mr. Venissat to orthopedic surgeon, Dr. Dale Bernauer of Lake Charles, Louisiana, for further evaluation and treatment.

Dr. Bernauer evaluated Mr. Venissat and recommended that he undergo a cervical discectomy and fusion at the levels C4-7, having found herniations at all three levels. Mr. Venissat sought a second opinion regarding the recommendation of surgery with neurosurgeon, Dr. Thomas Bertuccini of Lafayette, Louisiana. Dr. Bertuccini met with and evaluated Mr. Venissat on January 14, 2004. Based on his evaluation and review of the MRI results, he agreed that there was a cervical disc herniation at the C4-5 level. He also diagnosed bilateral foraminal stenosis (narrowing of the cervical disc space) due to degeneration of the discs at the lower levels. Nevertheless, Dr. Bertuccini opined that surgery was not immediately necessary due to his impression, after conducting additional testing, that no neurologic deficits were being caused by these conditions. Instead, Dr. Bertuccini recommended continued conservative treatment and a six-month follow-up evaluation.

Mr. Venissat had been medically advised about the risks of further injury, particularly paralysis, that could arise if the herniation was not surgically addressed. He consequently sought a third opinion with neurosurgeon, Dr. Homero Anchondo of Houston, Texas. Dr. Anchondo evaluated Mr. Venissat about three months later, on April 1, 2004, and opined that surgery, sooner rather than later, would be necessary to alleviate Mr. Venissat's symptoms and to reduce or eliminate any risk of spinal cord injury that could be caused by the herniated disc. Finding also that significant deterioration had occurred in the cervical spine at the lower levels, he agreed with Dr. Bernauer's recommendation for a three-level fusion. Mr. Venissat agreed to move forward with the surgery. On May 14, 2004, Dr. Anchondo performed a discectomy and spinal fusion surgery at the C4-7 levels. Following what was deemed by his doctors to have been a successful surgery, it took Mr. Venissat approximately a year to recover. He was left with a limited range of motion in the neck as a result of the fusion.

As stated earlier, at the time of the car accident, Mr. Venissat was sixty-eight years old and was actively employed at a local refinery as a security guard, although he had previously retired from his employer of forty-three years. After the car accident, he continued to work until the day before the May 14th surgery; by that time he was seventy years old. About a year after his surgery in the Spring of 2005, he was released to return to work by Dr. Anchondo; however, Mr. Venissat chose to resign to reenter retirement.

The jury found that Mr. Venissat sustained injuries as a result of the November 1, 2002 rear-end collision and then awarded the following general damages, totaling $45,000: pain and suffering, $25,000; permanent disability, $5,000; loss of enjoyment of life, $5,000; and mental anguish, $10,000. He was

4

awarded the following special damages by the jury: past medical expenses, $25,000; and loss of past wages, $8,000. Mrs. Venissat was awarded $5,000 in loss of consortium damages. The total damage award was $83,000.

Mr. and Mrs. Venissat have appealed the general damage and special damage awards, arguing that an increase is justified by the evidence produced at trial. They also allege that the trial court committed reversible, legal error by failing to provide the jury with the instruction of law, as set forth in *Housley v. Cerise*, 579 So.2d 973 (La.1991), which states that a person is entitled to a presumption that a disability resulted from an accident, if the person was in good health prior to the accident, but thereafter continuously manifests a disabling injury, and the medical evidence reasonably supports the possibility of such a causal link. They contend that the omission of this instruction contributed to the low damage awards rendered by the jury.

The defendants collectively disagree and argue that, based on the evidence presented, the jury did not err in rendering the special or general damage awards, nor did the trial court err in failing to provide a *Housley* instruction to the jury. They argue that the majority of Mr. Venissat's medical treatment, including portions of the surgery, addressed pre-existing degenerative conditions found at the C5-7 levels of his spine that were not caused or aggravated by the accident. The defendants contend that Mr. Venissat's actual injuries caused by the accident were minor, soft tissue injuries that resolved within four months after the collision. They base this on medical records showing that Mr. Venissat was initially released from Dr. Schlamp's care in February 2003, after he expressed a successful resolution to his neck and scapular pain as a result of treatment with prescribed medication and physical therapy.

Consequently, the defendants argue that the jury reasonably rejected the requests for full compensation for the three-level cervical surgery and all other "over-treatment" of Mr. Venissat's neck, as well as the request for payment of all of his claimed lost wages accrued post-surgery. The defendants speculate that these awards reflect the jury's intent to only compensate the plaintiff for approximately one-third of the damages sought, *i.e.*, those which they believed were likely caused by the car accident. The defendants also contend that the general damage award set by the jury is consistent with this rationale and, therefore, is also not abusively low.

In answer to the appeal, the defendants also allege that the trial court erred in rendering judgment against St. Paul. They argue that St. Paul's liability coverage was not triggered in this case because the self-insured retention clause of its policy with the CPSD requires the CPSD to pay up to $250,000 in damages before St. Paul's obligation arises. Because the total damage award rendered by the jury was $83,000, they contend that it was error for the trial court to hold St. Paul liable.

The plaintiffs, on the other hand, contend that St. Paul was properly named in the judgment. They assert that they satisfactorily carried their burden of proving that St. Paul had in effect a policy of liability coverage issued to the CPSD for the damages sustained, while no evidence was submitted during trial to establish any limitations on this coverage. Accordingly, they argue that the trial court did not err in rendering judgment against St. Paul as well.

III.

**LAW AND DISCUSSION**

*Omission of Jury Instruction*

The plaintiffs sought a jury instruction on the presumption of causation that is set forth in *Housley v. Cerise*, 579 So.2d 973 (La.1991), which states:

6

> [a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

*Id.* at 980 (quoting *Lucas v. Ins. Co. of N. America*, 342 So.2d 591, 596 (La.1977)).

The special jury charge that was requested by the plaintiffs is a direct quote of this language. According to the record, the trial judge denied the request for the inclusion of the charge in the jury instructions and stated his reason for doing so as follows:

> [I] felt there was evidence showing that this defendant [sic] not only was he not in good health at the time but the bad health that he suffered was similar to the condition in which we're all here this week, a neck condition, and because of that I don't think the charge would be appropriate.

The record reveals that the trial court is referring to evidence consisting of medical testimony and medical and employment records documenting Mr. Venissat's history of a degenerating and previously injured neck/cervical spine that was occasionally symptomatic prior to the accident at issue. The record shows that in 1989 Mr. Venissat suffered a work-related fall for which he complained of injury to his neck, middle back, and left shoulder. In 1992, Mr. Venissat stated on a periodic medical questionnaire given at his place of employment that he was not in good health due to a "neck problem." In 1996, Mr. Venissat reported that he had a bicycle accident while at work and that he sustained injury to his neck as a result. The record is unclear regarding the full extent of the treatment he received for the complaints of pain and injury that occurred before 1996. The record does reveal that in 1996 he received treatment from his family physician, Dr. Schlamp, for complaints of neck pain and "tingling" down his right arm to his index and middle

7

fingers—which are similar to some of his complaints asserted after the 2002 accident that is at issue in this case—resulting in a diagnosis of an arthritic neck and loss of joint space at C6-7 and degenerative changes from C4-7 in Mr. Venissat's cervical spine.

Despite these facts, the plaintiffs contend that the trial court erroneously concluded that this history precluded the inclusion of the *Housley* charge in the instructions to the jury. They assert that any symptoms associated with the pre-existing degenerative conditions or prior injuries had resolved years before the 2002 collision occurred. They contend that Mr. Venissat was not incapacitated by these pre-existing conditions or those prior accidents, as is particularly evidenced by the fact that he was able to maintain perfect attendance for the last twelve years of his employment before retiring. The plaintiffs argue that, consequently, Mr. Venissat was a "healthy" person, as that term relates to the presumption of causation at issue.

Moreover, the plaintiffs argue that the trial court's decision to reject the instruction on the presumption of causation constituted legal error because the burden was never properly placed on the defendants to prove to the jury that some cause, other than the accident, existed for Mr. Venissat's spinal injuries and symptoms. They contend that the jury was inadequately instructed, which resulted in its failure to properly compensate them for all of the injuries, medical treatment, and lost wages that were necessitated by the accident. For these reasons, they assert that the trial court's ruling constitutes a reversible error of law, requiring this court to undertake a de novo review of the facts.

The question of whether Mr. Venissat was entitled to have this instruction on causation presented to the jury is a question of fact that cannot be disturbed on appeal absent a finding of manifest error. *Viviano v. Progressive Sec.*

*Ins. Co.*, 05-125 (La.App. 3 Cir. 1/11/06), 920 So.2d 313, *writ denied*, 06-359 (La. 4/28/06), 927 So.2d 290 (citing *Seitz v. Scofield*, 01-1295 (La.App. 5 Cir. 2/26/02), 812 So.2d 764, *writ denied*, 02-0861 (La. 5/24/02), 816 So.2d 855). A finding is manifestly erroneous if no reasonable factual basis exists for the finding in the record. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). An important caveat is that when there are two permissible views of the evidence, the fact finder's choice between them cannot be deemed manifestly erroneous. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

If the appellate court finds, however, that manifest error was committed, this error will require a de novo review, if the court finds that this omission was so prejudicial that it materially affected the result and deprived a party of substantial rights. *Chaisson v. Avondale Indus., Inc.*, 05-1511 (La.App. 4 Cir. 12/20/06), 947 So.2d 171, *writ denied*, 07-411 (La. 4/5/07), 954 So.2d 145 (citing *Lam v. State Farm Mut. Auto Ins. Co.*, 03-180 (La.App. 4 Cir. 4/1/05), 901 So.2d 559, *rev'd on other grounds*, 06-2361 (La. 11/29/06), 946 So.2d 133). The fourth circuit explained this analysis as follows:

> By using the manifest error standard, the court presumes that the jury utilized the correct law. *Rathey v. Priority EMS, Inc.*, 04-0199, p. 27 (La.App. 4 Cir. 1/12/05), 894 So.2d 438, 458, *reh'g denied*, (2/24/05), *writ denied*, 05-0789 (La. 5/6/05), 901 So.2d 1107, *writ denied*, 05-0802 (La. 5/6/05), 901 So.2d 1108.
>
> The appellate court will conduct a *de novo* review 'if the jury applied the incorrect law because of erroneous jury instructions' and it 'could have affected the jury's decision.' *Id*. at pp. 27-28, 894 So.2d at 459. *De novo* review is used only if the jury charges precluded 'the jury from reaching a verdict based on the law and the facts.' *Jones v. Liberty Mut. Ins. Co.*, 568 So.2d 1091, 1094 (La.App. 5th Cir. 1990). The reviewing court considers 'the circumstances of the case and the instructions as a whole, and should measure the "gravity or degree of error."' *Rathey*, 04-0199, p. 28, 894 So.2d at 459, quoting

> *Jones v. Liberty Mut. Ins. Co.*, 568 So.2d 1091, 1094 (La.App. 5th Cir. 1990). 'Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice.' *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 8 (La. 8/31/00), 765 So.2d 1017, 1023.

*Chaisson*, 947 So.2d at 190.

Jury instructions are adequate when they fairly and reasonably denote the issues and provide the correct principles of law for the jury to apply to those issues. *Fleming v. Acadian Geophysical Servs., Inc.*, 02-264 (La.App. 3 Cir. 10/2/02), 827 So.2d 623, *writ denied*, 02-2717 (La. 1/10/03), 834 So.2d 440. In other words, the trial court must give jury instructions that properly reflect the law applicable to the facts of the particular case. *Brown v. Diamond Shamrock, Inc.*, 95-1172 (La.App. 3 Cir. 3/20/96); 671 So.2d 1049. This court explained in *Iorio v. Grossie*, 94-846, pp. 2-3 (La.App. 3 Cir. 10/4/95); 663 So.2d 366, 368-69:

> A trial court should give all requested instructions that correctly state the law, provided that they are material and relevant to the litigation. Courts are not obligated to give the specific jury instructions submitted by the parties, but omission of a requested instruction containing an essential legal principal [sic] may constitute reversible error. A court has fulfilled its duty if its instructions fairly and reasonably point out the issues presented by the pleadings and evidence and provide the principles of law necessary to resolve those issues.

(Citations omitted).

First, applying the manifest error standard of review, we find that based on the evidence presented at trial, the trial court did not err by rejecting the *Housley* instruction. The facts that were presented could reasonably lead one to conclude that Mr. Venissat was not in good health before the accident, a finding that is sufficient to preclude the application of the presumption in this case, and to preclude the inclusion of the charge in the jury instructions. In summary, the evidence showed

that Mr. Venissat suffered from pre-existing degenerative changes in his cervical spine that were symptomatic from time-to-time prior to the 2002 accident. The record reflects that he was involved in prior accidents affecting his neck and/or cervical spine and shoulders and that he raised complaints and/or sought treatment multiple times in the years preceding the accident for pain and radiculopathy believed to have been generated by those pre-existing conditions and/or earlier trauma. In light of these facts, we cannot say that the trial court manifestly erred by finding that Mr. Venissat was not in good health, nor in consequently, rejecting the *Housley* instruction as inapplicable to this case. A discussion of whether legal error occurred and a de novo review is necessary is, therefore, moot.

### *Special Damages*

#### *Past Medical Expenses*

Past medical expenses are special damages that are capable of being determined with reasonable mathematical certainty and, as such, they must be proven by the person seeking them by a preponderance of the evidence. *Chatelain v. Rabalais*, 04-28 (La.App. 3 Cir. 7/7/04), 877 So.2d 324. The plaintiff seeking to recover past medical expenses must first show, through medical evidence, the existence of the claimed injuries and a causal connection between the injuries and the accident of which he or she is complaining. *Wright v. Gen. Aviation Co.*, 04-772 (La.App. 5 Cir. 11/30/04), 889 So.2d 1115. When claims for the accrued medical expenses are supported by medical bills, these expenses should be awarded unless there is contradictory evidence or reasonable suspicion that the bills are unrelated to the accident. *Brandao v. Wal-Mart Stores, Inc.*, 35,368 (La.App. 2 Cir. 12/19/01), 803 So.2d 1039, *writ denied*, 02-493 (La. 4/26/02), 814 So.2d 558. A jury manifestly errs if the victim has proven his or her medical expenses by a preponderance of the

evidence, and it fails to award the full amount of the medical expenses proven. *Gunn v. Robertson*, 01-347 (La.App. 5 Cir. 11/14/01), 801 So.2d 555, *writs denied*, 02-170, 02-176 (La. 3/22/02), 811 So.2d 942 (citing *Revel v. Snow*, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95-2820 (La. 2/2/96), 666 So.2d 1084); *see also, Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

In this case, the plaintiffs introduced medical bills establishing that a total of $74,971.77 in medical expenses for treatment and surgery were incurred after the rear-end collision. The defendants, however, argued to the jury that these expenses were excessive and should be discounted because that amount included costs of treatment for unrelated, previously existing degenerative cervical spine conditions. Ultimately, the jury awarded $25,000, an amount that is approximately one-third of the total amount of past medical expenses sought.

It is clear based on the testimony and evidence presented in the record that Mr. Venissat suffered from cervical spine problems both before and after the accident. The problem faced by the jury, then, was determining whether all of the problems of which Mr. Venissat complained were exacerbated by the accident. We can only speculate as to the jury's specific findings regarding which alleged injuries and treatment it believed were a consequence of the accident, but it is apparent that the jury intended to only compensate the plaintiffs for a portion of Mr. Venissat's injuries and treatment. We find, however, that this discounting of the sought-after medical expenses is not reasonably supported by the record.

"In order to reverse the findings of a jury, an appellate court must find from the record that a reasonable factual basis does not exist for the finding or that the finding is clearly wrong." *Bernard v. Guilbeau,*, 05-844 (La.App. 3 Cir. 2/1/06), 922 So.2d 683, 687 (citing *Vaughn v. Progressive Sec. Ins. Co.*, 03-1105 (La.App. 3

12

Cir. 3/2/05), 896 So.2d 1207). In this case, the record shows that testimony was offered by Mr. Venissat and his wife, establishing that over the course of the immediate days following the collision, he developed pain in the cervical spine and shoulder, for which he sought treatment with his primary care physician, Dr. Schlamp, resulting in an ultimate diagnosis of a disc herniation. Although the plaintiffs contend that Mr. Venissat was already injured before the accident occurred, we did not find that there was any proof offered by defendants, on the other hand, establishing that he was actively suffering from, or being treated for, any neck or cervical pain prior to the collision. Likewise, they failed to provide any definitive evidence of the existence of a cervical disc herniation before the 2002 collision.

What the defendants, instead, established was that Mr. Venissat had been diagnosed with degenerative disc disease in 1996, for which he received conservative treatment, and that in 1996 and prior to that time, he had also suffered cervical spine injuries and related symptoms for which he had also received treatment. They also introduced medical records establishing that Dr. Schlamp had been *suspicious* of the possible existence of a cervical disc herniation or of Mr. Venissat's susceptibility to the occurrence of the condition as early as 1996.

Considering all of this, we find that these facts provide reasonable support for the conclusion that, more likely than not, the accident caused all of Mr. Venissat's complained of injuries after the 2002 collision either by directly creating new injuries or aggravating his pre-existing conditions. This conclusion is supported by the testimony of Mr. Venissat's family physician, Dr. Schlamp, and his surgeon, Dr. Anchondo, who both opined that the accident caused the herniation and likely aggravated and made symptomatic those previously existing degenerative and arthritic conditions in his cervical spine. We do recognize that Dr. Bertuccini, who

13

examined Mr. Venissat once, found it impossible to render an opinion as to whether the herniation at C4-5 or the other conditions were caused by or made symptomatic by the accident, considering Mr. Venissat's medical history, and that Dr. Bernauer, who examined Mr. Venissat twice, did not offer an opinion in this regard.

We note that the diagnosis of a cervical disc herniation at C4-5 was agreed upon by all three orthopedic surgeons who evaluated Mr. Venissat as well as the existence of degenerating discs below the area of the herniation. The only issue amongst them was whether the surgery was a needed treatment at the time. Two of those orthopedic surgeons, Drs. Bernauer and Anchondo, opined that Mr. Venissat would benefit from surgery, while Dr. Bertuccini solely disagreed as to the necessity of the surgery. However, he added that he would maintain this opinion as to the need for surgical intervention so long as Mr. Venissat's neurological exams remained normal and he refrained from engaging in heavy activity.

As referenced earlier, proof of a causal relationship between the accident and any claimed resulting injuries must be established by a preponderance of the evidence:

> In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. *American Motorist Insurance Co. v. American Rent-All, Inc.*, 579 So.2d 429 (La.1991); *Aucoin v. State Farm Mut. Auto. Ins. Co.*, 505 So.2d 993 (La.App. 3d Cir.1987); *Richard v. Walgreen's Louisiana Co.*, 476 So.2d 1150 (La.App. 3d Cir.1985). Plaintiff must prove causation by a preponderance of the evidence. *Morris v. Orleans Parish School Bd.*, 553 So.2d 427 (La.1989). The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. *Mart v. Hill*, 505 So.2d 1120 (La.1987); *Villavaso v. State Farm Mut. Auto. Ins. Co.*, 424 So.2d 536 (La.App. 4th Cir. 1982).

*Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 759. We find that the plaintiffs successfully carried this burden.

A tortfeasor's responsibility for his actions includes all of the natural and probable consequences of his tortious conduct. *Perniciaro v. Brinch*, 384 So.2d 392 (La.1980). In a situation in which the tortfeasor aggravates a pre-existing injury, he or she is required to compensate the victim for the full extent of the aggravation. *Id.* "The defendant's liability for damages is not mitigated by the fact that the plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant." *Lasha*, 625 So.2d at 1005. Moreover, a tortfeasor must pay for medical treatment of his victim, even over treatment or unnecessary treatment, unless such treatment was incurred in bad faith. *Gunn*, 801 So.2d 555.

Here, we find that the medical evidence and facts presented proved that it is more probable than not that the accident caused Mr. Venissat's disc herniation and resulted in aggravation of his pre-existing conditions. The plaintiffs established with medical bills the amount of the expenses incurred to treat these injuries and no evidence of bad fath in incurring these expenses was presented at trial. Therefore, we amend the jury's award of past medical expenses and render an award of $75,000, commensurate with those expenses established in the record.

*Past Lost Wages*

At trial, Mr. Venissat's expert economist, Dr. Randy Rice, provided a calculation of lost wages totaling $32,000 to the date of trial, adjusted for inflation. The jury, on the other hand, awarded only $8,000 in past lost wages. Defendants argue on appeal that this award is not manifestly erroneous and is consistent with the

15

jury's apparent conclusion that not all of Mr. Venissat's medical treatment, and hence, lost wages incurred after surgery, were a consequence of the subject accident.

> To recover for actual wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings. *Craven v. Universal Life Ins. Co.*, 95-1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, *writ denied*, 96-1332 (La. 9/27/96); 679 So.2d 1355. Past lost earnings are susceptible of mathematical calculation from evidence offered at trial. *Id.* An award for past lost earnings requires evidence as reasonably establishes the claim, which may consist of the plaintiff's own testimony. *Id.* An award for past lost earnings is not subject to the much-discretion rule when it is susceptible of mathematical calculation from documentary proof. *Mormon v. Stine, Inc.*, 95-615 (La.App. 3 Cir. 11/2/95); 664 So.2d 600.

*Mathews v. Dousay*, 96-858, p. 15 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, 513. Mr. Venissat proved his claim for past lost wages. He established that he was not released to return to work after the cervical surgery until approximately one year thereafter. Also, his expert economist submitted calculations of the total lost wages for that time period in the amount of $32,000. This evidence of lost wages was not contradicted by the defendants. There is no evidence in the record to support an award of only $8,000 in past lost wages to Mr. Venissat. Again, the jury manifestly erred in discounting this award in attempts to only compensate the plaintiff for the past lost wages it believed were caused by accident-related injuries. The past lost wage award of $8,000 is, accordingly, amended to $32,000, as established by the evidence presented during the trial.

### *General Damages*

A jury possesses vast discretion in its assessment of general damages, such that upon appellate review such awards may only be disturbed if there has been a clear abuse of that discretion. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337

16

(La.1993) (citing *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1977)). "[I]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient." *Id.* at 1340 (quoting *Reck v. Stevens*, 373 So.2d 498, 501 (La.1979)). The facts submitted as evidence must be reviewed by the appellate court in the light most favorable to the judgment rendered. *Id.* (citing *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978)).

After reviewing the record, we find that the award for pain and suffering of $25,000 is below that which a reasonable trier of fact could assess in such a case. The jury verdict form reflected an affirmative finding by the jury that Mr. Venissat was injured as result of the rear-end collision. However, as discussed earlier, the jury consistently calculated special damage awards, and we believe also, a general damage award, that reflects the conclusion that Mr. Venissat suffered a "short-lived" soft-tissue injury as a result of the accident. The medical evidence does not reasonably support such a conclusion, but rather shows that the injured plaintiff was an individual in his late 60s who suffered from a degenerating cervical spine, resulting in him being more susceptible to the injuries and pain that, not coincidentally, developed after the accident. The evidence is undisputed that within the two days following the accident, Mr. Venissat had developed chronic pain and radiculopathy, ultimately believed to have been caused by trauma from the accident. The record also reflects that Mr. Venissat only achieved relief of his chronic pain and radiculopathy symptoms after he had undergone the three-level cervical discectomy and fusion—approximately two years after the accident occurred.

Prior to undergoing the surgery, Mr. Venissat testified that the chronic pain affected his sleep, his disposition, and overall quality of life. Mrs. Venissat confirmed that she observed these negative changes in her husband until his problems

17

were resolved by the surgery. Moreover, the record reflects that although Mr. Venissat was able to continue to work after the collision, he and his wife testified that he did so while managing his pain with medication and physical therapy, neither of which provided him with lasting results. Considering all of this, and specifically noting the medical assessments that were made in this case, the age of the injured plaintiff, and the residual affects of the injury and subsequent cervical fusion, we amend the prior award of $25,000 for pain and suffering and raise it to the lowest reasonable amount of $60,000. The quantum of all other claims comprising the total general damage award—$5,000 for loss of enjoyment of life and $10,000 for mental anguish—are affirmed. Therefore, the total general damage award is $75,000.

### *The Self- Insured Retention Clause*

It is undisputed that at the time of the November 1, 2002 accident involving Mr. Venissat and Deputy Ferguson, St. Paul had in effect a policy of automobile liability insurance issued to the CPSD. Deputy Ferguson was driving a CPSD patrol car and was on-duty when, while reaching down for his radio, he rear-ended Mr. Venissat. The defendants do not dispute that Deputy Ferguson was at fault and caused the collision.

The St. Paul policy included a self-insured retention endorsement of $250,000 per accident. After the jury's verdict, totaling $83,000, was rendered, the trial court entered a judgment, naming Deputy Ferguson, the CPSD, and St. Paul as the parties liable for the payment of those damages, with legal interest from the date of filing, along with court costs. The defendants challenged St. Paul's inclusion in the judgment during a post-trial hearing before the trial court. Their argument was rejected by the trial court, which found that the evidence presented at trial established

that the St. Paul policy provided coverage for the accident, but that no evidence limiting this coverage had been introduced.

We find that the trial court did not manifestly err when it named St. Paul as a liable defendant in the judgment. The plaintiffs bore the burden of establishing that the policy coverage applied. *Ho v. State Farm Mutual Auto. Ins. Co.*, 03-480 (La.App. 3 Cir. 12/30/03), 862 So.2d 1278. The burden rested with the insurer, St. Paul, however, to establish the existence of any policy limits or exclusions. *Tunstall v. Stierwald*, 01-1765 (La. 2/26/02), 809 So.2d 916. We find that the plaintiffs satisfactorily carried the burden of establishing coverage for their damages by introducing into evidence the automobile liability policy issued by St. Paul to the CPSD, without objection, and by eliciting the testimony of the CPSD's risk manager, who testified that the terms of the policy provided coverage for the damages caused in the accident at issue. However, we find that the defendants did not satisfy their burden of showing any applicable limitations on this coverage. Accordingly, we find no error in the trial court's designation of St. Paul as a judgment-debtor.

IV.

## CONCLUSION

For the foregoing reasons, we amend the jury verdict for past medical expenses, past lost wages, and pain and suffering awarded to Theodore and Vera Venissat to reflect the following damages: past medical expenses, $75,000; past lost wages, $32,000; and pain and suffering, $60,000. The jury's awards of $5,000 for loss of enjoyment of life and $10,000 for mental anguish are affirmed. Therefore, the total general damage award is $75,000. All other aspects of the judgment are affirmed. Costs of this appeal are assessed to defendants, St. Paul Fire & Marine

19

Insurance Company, Charles Ferguson, and the Calcasieu Parish Sheriff's Department.

**AFFIRMED AS AMENDED.**