ROGER HAWKINS
v.
AMERICAN CENTURY CASUALTY INSURANCE COMPANY, ET AL.
No. 08-1452.
Court of Appeals of Louisiana, Third Circuit.
May 6, 2009.
Not designated for publication.
BARRY MARCUS BARNETT, Lacroix, Levy & Barnett Counsel for: Plaintiff/Appellee-Roger Hawkins
DANIEL G. BRENNER, Bolen, Parker, Brenner & Lee Counsel for: Defendants/Appellants-American Century Casualty Insurance Company and James Ashmore
Court composed of THIBODEAUX, Chief Judge, EZELL, and GENOVESE, Judges.
THIBODEAUX, Chief Judge.
Defendants-appellants, American Century Casualty Insurance Company (American Century) and James Ashmore, appeal an Alexandria City Court judgment that awarded plaintiff-appellee, Roger Hawkins, $10,000.00 in general damages for his injuries and $1,440.51 in medical expenses incurred as a result of a motor vehicle accident with Ashmore. American Century appeals the portion of the medical expense award attributable to treatment rendered by Dr. Robert Rush, arguing a reduction is needed because the amount awarded erroneously includes payment for treatment unrelated to the accident. Also, American Century contends the general damage award should be reduced because, as was evidenced by Hawkins' intermittent treatment, his injuries did not persist for six months as found by the trial court. The judgment is amended and affirmed.

I.

ISSUES
1. Did the trial court manifestly err in finding that Hawkins' accident-related injuries persisted for at least six months?
2. Is the award of general damages abusively high when the record reveals that Hawkins did not seek treatment for his soft tissue injuries until one week after the accident and, thereafter, did not seek medical treatment until approximately four months later?
3. Did the trial court manifestly err by including in the medical expense award charges for services rendered by Dr. Rush more than six months after the accident since the trial court found that Hawkins suffered from injuries of "at least" six months' duration?

II.

FACTUAL BACKGROUND
Hawkins was involved in a car accident with Ashmore in Alexandria, Louisiana, on September 28, 2006. Hawkins was driving on Eddie Williams Drive, and Ashmore was stopped at the stop sign on Sugarhouse Road, at the intersection of the two roads. Ashmore claims to have misjudged the distance of Hawkins' approaching vehicle and drove onto Eddie Williams Road in front of Hawkins, causing the collision. No one received medical treatment at the scene of the accident, although Hawkins complained to the investigating officer at the scene that he may have suffered an injury.
On October 3, 2006, Hawkins sought treatment at a local hospital emergency room (ER) for pain in his neck and shoulders. After being diagnosed and prescribed anti-inflammatory medication, pain medication, and a muscle relaxant for "muscle spasm" and a "contusion" to the "chest wall," he was released that day. He did not seek any additional medical treatment until February 21, 2007, approximately four and one-half months later. It was at that time that he began receiving medical care from Dr. Robert Rush, a physician board-certified in occupational medicine and operating under the business of Injury Management Specialists.
At his initial appointment with Dr. Rush, Hawkins complained of neck pain and pain in the upper left portion of his chest. Dr. Rush diagnosed a "residual" cervical strain, initially noting "minimal left upper trapezius muscle tightness and tenderness" and "left clavicle tenderness." He ordered Hawkins to continue taking the over-the-counter, anti-inflammatory/pain medication that he was currently taking and to apply heat to the affected areas. Dr. Rush saw Hawkins again on two other occasions in March 2007. On that final March visit, he released Hawkins from his care, indicating in his medical records Hawkins had reached a resolution of his chest and neck pain.
Dr. Rush next saw Hawkins on May 4, 2007, when he sought treatment for neck pain that had allegedly persisted for three days. Dr. Rush prescribed an antiinflammatory and pain medication, a muscle relaxant, and "exercise therapy" with a physical therapy group called Agilus Health. Dr. Rush saw Hawkins again on May 22, 2007, and for the last time in June 2007, at which time he opined that Hawkins was asymptomatic.
Ashmore stipulated to, and was assessed, 100% liability during the bench trial. Hawkins agreed to limit any recovery sought to the $10,000.00 in available liability coverage offered by Ashmore's insurer, American Century. The trial court awarded past medical expenses in the amount of $1,440.51, which included $627.00 for all of Hawkins' visits to Dr. Rush. The trial court also awarded $10,000.00 in general damages. The trial court's judgment, nevertheless, reflects a total award of $10,000.00 for personal injury to the plaintiff, with legal interest from the date of judicial demand, recognizing the stipulated limitation of liability.
American Century has appealed on behalf of itself and Ashmore, arguing that the trial court's finding of a soft-tissue injury, lasting six months, is manifestly erroneous when the facts are that Hawkins delayed seeking any medical treatment for five days after the accident. After receiving that initial treatment, he did not seek any further medical treatment for four and one-half months. American Century contends the general damage award of $10,000.00 is, consequently, abusively high. Additionally, it argues the trial court manifestly erred by including in the medical expense award the payments for Hawkins' visits to Dr. Rush that occurred after March 21, 2007, in light of the court's finding that Hawkins' injuries persisted only through March, six months after the accident. American Century seeks a reduction in medical expenses in the amount of $275.00, the cost of the May and June office visits to Dr. Rush.

III.

LAW AND ANALYSIS

General Damages
General damages "are inherently speculative in nature and cannot be fixed with mathematical certainty." Wainwright v. Fontenot, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74 (citation omitted). Consequently, the determination of the appropriate amount of these damages is a question of fact to be determined by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). The appellate court's role is to review the exercise of that discretion while providing great deference to the fact finders' decision. Id. Moreover, "[t]he facts submitted as evidence must be reviewed by the appellate court in the light most favorable to the judgment rendered." Venissat v. St. Paul Fire & Marine Ins. Co., 06-987, p. 17 (La.App. 3 Cir. 8/15/07), 968 So.2d 1063, 1074 (citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)). As was stated by the supreme court:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn, 623 So.2d at 1261.
The trial court stated in its written Reasons for Judgment that it found Hawkins "to be a credible witness and . . . believed he suffered an injury of at least six months duration." The trial court awarded $10,000.00 in general damages for that injury but reduced that amount because the total damages were limited to $10,000.00 pursuant to the stipulation of the parties. The trial court wrote that its judgment, therefore, reflected a reduction of the general damage award to $8,559.49 for a sixmonth cervical injury, due to its award of past medical expenses, which is also to be paid from the $10,000.00 maximum damage award that is available.
In support of its findings, the trial court stated that it found Hawkins was suffering from objective signs of injury when he sought treatment at the hospital emergency room (ER) five days after the accident. The ER physician noted complaints of neck pain and anterior chest tenderness in a diagonal pattern from the left shoulder consistent with a seat belt injury. The trial court also relied on the medical records of Dr. Rush, which indicated that when Hawkins commenced his treatment with Dr. Rush in February, he was suffering from left upper trapezius tightness and tenderness. Dr. Rush diagnosed a cervical strain caused by the September car accident. According to the trial court, this opinion regarding causation remained undisputed during the trial. Consequently, the trial court found the injuries to have lasted for a period of six-months, ending in March 2007, based on the evidence presented in the record that also failed to establish the later office visits of May and June were for treatment of injuries related to the September accident.
Hawkins testified that the pain he suffered after the accident was exacerbated by physical activity such as mowing his yard and lifting things. He also testified to suffering from headaches and having difficulty sleeping and concentrating during that period. According to Hawkins, his symptoms were essentially resolved in March 2007, but he returned to Dr. Rush for treatment in May when he began experiencing neck pain again. He testified that he had been symptom-free since June 2007, the date of his last visit with Dr. Rush.
The record further shows Hawkins was fifty-nine years old when the accident occurred. He was a Medicare recipient who had a medical history including treatment for chest pain, back pain, and diabetes. He lived on a fixed income of approximately $1,600.00 per month with his wife, with whom he supported four grandchildren. He testified at trial that the four-month gap in seeking medical treatment after his first visit was due to his financial inability to pay for office visits, explaining that he experienced a lapse in Medicare insurance coverage during that time. During this time, he testified to treating the pain in his neck, shoulders, and chest with the medication prescribed by the emergency room physician and, later, with over-the-counter medication.
Based on these facts, we cannot say that the trial court manifestly erred in finding Hawkins suffered from accident-related injuries for a minimum of six months after the accident. We also do not find that the trial court abused its discretion in awarding general damages to the plaintiff in the amount of $10,000.00 for the pain and suffering associated with these injuries.

Medical Expenses
Awards for past medical expenses are reviewed for manifest error. Armentor v. Safeway Ins. Co., 07-805 (La.App. 3 Cir. 12/19/07), 972 So.2d 444. A plaintiff seeking payment for past medical expenses is required to show that it is more probable than not that the medical treatment was necessitated by trauma suffered from the accident at issue. Este v. State Farm Ins. Cos., 96-99 (La.App. 3 Cir. 7/10/96), 676 So.2d 850. Medical expenses incurred by a plaintiff and supported by a bill are sufficient for inclusion in a judgment unless there is sufficient contradictory evidence or reasonable suspicion that the bill is for treatment unrelated to the accident. Id.
Hawkins introduced in evidence an invoice totaling $627.00 for treatment rendered during six office visits to Dr. Rush. The trial court found that Hawkins' injuries were resolved at least six months after the accident, as evidenced by his initial release from treatment by Dr. Rush in March 2007 after three office visits. The trial court addressed the three later office visits that occurred in May and June of 2007 and stated that there was no proof presented at trial that the treatment rendered on those dates was related to the accident. Our review of the record reveals that finding to be correct. Accordingly, the trial court erred in awarding payment of the medical expenses incurred for those three visits to Dr. Rush after March 21, 2007. The award for past medical expenses of $627.00 to Dr. Rush is therefore reduced by $275.00 to reflect an award of past medical expenses for treatment by Dr. Rush in the amount of $352.00.

IV.

CONCLUSION
The parties stipulated that the maximum damage award recoverable by the plaintiff-appellee, Roger Hawkins, was $10,000.00. The trial court's judgment awards the sum of $10,000.00 to the plaintiff-appellee, Roger Hawkins, without distinguishing therein the amount of the award that is to be apportioned to the payment of special or general damages. However, in its written Reasons for Judgment, the trial court expressly stated that its general damage award to Roger Hawkins was $10,000.00. The trial court also stated in its reasons that past medical expenses in the amount of $1,440.51 were proven by Hawkins, and it awarded payment in that amount. This necessitated a reduction in the general damage award from the $10,000.00 maximum amount to the remaining balance of $8,559.49, so as not to exceed the maximum amount of damages recoverable.
We have affirmed the trial court's award of $10,000.00 in general damages to Roger Hawkins. We have also found that the trial court manifestly erred in its assessment of past medical expenses to Dr. Robert Rush and, therefore, have reduced that $627.00 award by $275.00, to reflect an award of $352.00 to Dr. Rush. Therefore, the total past medical expenses award in the amount of $1,440.51 is reduced to $1,165.51. The general damage award is, therefore, increased by $275.00 to $8,834.49.
AMENDED, AND AS AMENDED, AFFIRMED.