| | | |
|---|---|---|
| **HENRY PETE** | * | **NO. 2021-CA-0626** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **BOLAND MARINE AND** | * | |
| **MANUFACTURING** | | **FOURTH CIRCUIT** |
| **COMPANY, LLC, ET AL** | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-10545, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**JAMES F. MCKAY III
JUDGE PRO TEMPORE**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Dale N. Atkins, Judge Pro
Tempore James F. McKay III[1])

**DYSART, J., DISSENTS**

LINDSEY A. CHEEK
THE CHEEK LAW FIRM
650 Poydras Street
Suite 2310
New Orleans, Louisiana 70130
-and-
THOMAS M. FLANAGAN
ANDERS F. HOLMGREN
FLANAGAN PARTNERS LLP
201 St. Charles Avenue
Suite 3300
New Orleans, Louisiana 70170
-and-
MELISSA SCHOPFER, PRO HAC VICE
JEAN-MICHEL LECOINTRE, PRO HAC VICE
MICHAEL K. HIBEY, PRO HAC VICE
GARY DIMUZIO, PRO HAC VICE
WILLIAM A. KOHLBURN, PRO HAC VICE
SIMMONS HANLY CONROY, LLC
One Court Street
Alton, Illinois 62002
      Counsel for Plaintiff/Appellee, Tyrone Pete, Plaintiff-in-Substitution for
          Henry Pete, Deceased

---

[1] Judge Pro Tempore James F. McKay III signs pursuant to the order issued by the Louisiana
Supreme Court on December 20, 2022.

RANDELL EDWARD TREADAWAY
BRETT MICHAEL BOLLINGER
JEFFREY E. MCDONALD
DARREN MILTON GUILLOT
TREADAWAY BOLLINGER, LLC
406 North Florida Street
Suite 2
Covington, Louisiana 70043
      Counsel for Defendant/Appellant, Ports America Gulfport, Inc.

**AFFIRMED**
**JANUARY 5, 2023**

Ports America Gulfport, Inc., ("Ports America"), formerly known as Atlantic and Gulf Stevedores, Inc. (A&G"), appeals the District Court's February 1, 2021 judgment in favor of plaintiff/appellee Henry Pete ("Henry Pete").[2] For the following reasons the District Court's judgment is affirmed.

**FACTS AND PROCEDURAL BACKGROUND**

On or about May 7, 2019, Henry Pete was diagnosed with malignant mesothelioma. On October 7, 2019, he filed his petition for damages averring that he contracted mesothelioma as a result of his direct exposure to asbestos while working as a longshoreman at various wharves and work sites at the Port of New Orleans from 1964-1968. He also asserted a take-home claim, which was a result of having personal contact with the contaminated work clothing of his father, Preston Pete, who worked as a longshoreman with asbestos cargo at the Port of New Orleans between 1946-1968.[3] For purposes of this appeal, this theory of recovery is referred to as a bystander claim or a take-home claim.

From October 12, 2020, through November 4, 2020, a jury trial was held. Henry Pete proceeded to trial on claims of direct exposure and take-home exposures against various defendants including appellant Ports America.[4] On November 4, 2020, the jury, without objection, was given a special verdict form, which was composed of nine jury interrogatories. Following deliberations, the jury rendered a verdict. The jury found that three of the defendants, Cooper T. Smith

---

[2] On April 28, 2021, the District Court granted Tyrone Pete's *ex parte* motion to substitute and amend petition pursuant to La. C.C.P. arts. 801 and 2315.1. Henry Pete, the named plaintiff in the case *sub judice*, was born on January 19, 1946, and died on March 30, 2021; Tyronne Pete, is his son and legal successor.

[3] Henry Pete lived in his parents' home from his birth in 1946 until 1968.

[4] The record reflects that some of the stevedore companies named in the original petition for damages, that had worked out settlements, were dismissed from the litigation, did not appear in the litigation, and/or, were not parties to this instant appeal.

Stevedoring Co., Inc. ("Cooper T. Smith"), South African Marine Corp. ("Safmarine"), and Ports America, were shared liability based on their substantial contribution to Henry Pete's development of mesothelioma attributable to take-home exposure from his father Preston Pete. On February 1, 2021, the judgment was memorialized wherein the District Court entered its judgment in accordance with the jury verdict.[5]

The jury assessed general and special damages totaling $10,351,020.00, which included $2,000,000.00 for past and future physical pain and suffering; $2,300,000.00 for past and future mental pain and suffering; $3,000,000.00 past and future physical disability; $2,500,000.00 for past and future loss of enjoyment of life; and $551,020.70 in past medical expenses. Ports America, Cooper T. Smith, and Safmarine were assigned virile shares. The jury exonerated SSA Gulf Inc. /Ryan Stevedoring/RyanWalsh ("Walsh") and James J. Flanagan Shipping Corp. /New Orleans Stevedores ("Flanagan"); judgment was issued in their favor on both claims of direct exposure and take-home.

On February 10, 2021, Ports America filed a motion for judgment notwithstanding the verdict ("JNOV").[6] In support of the JNOV, Ports America asserted that based on the evidence presented at trial, reasonable jurors could not have found that Henry Pete proved a take-home exposure claim was caused by the fault of Ports America. On March 26, 2021, the District Court heard argument on Ports America's JNOV; the JNOV was denied on July 13, 2021. This appeal follows.

**ISSUES FOR REVIEW**

---

[5] La. C.C.P. art. 1812(D).
[6] La. C.C.P. art. 1811.

While Ports America assigns numerous assignments of error, we narrow our discussion to three issues: (1) whether the District Court erred in denying Ports America's (and other defendants) Motion to Continue; (2) whether there was sufficient evidence to support the jury's verdict and the District Court judgment based on the jury verdict; and (3) whether the District Court's general damage award was excessive.

To examine the issue of the District Court's October 9, 2020 judgment denying the defendants' Motion to Continue, based on newly discovered evidence, to wit, Preston Pete's social security records, we review the procedural history relevant to this issue.[7]

On March 27, 2020, Ports America and other co-defendants moved for a summary judgment on the take-home claims. On June 18, 2020, the District Court denied their Motion for Summary Judgment. The District Court found that Henry Pete could discuss the take-home claim as he had offered competent/sufficient evidence as to what he perceived had occurred and what he personally observed once he began working with his father at the New Orleans port/riverfront from 1964-1968. Although Henry Pete offered competent testimony that was relevant to his direct and take-home exposure claims, the District Court found that Henry Pete (at this phase of the litigation) failed to present competent evidence to support the claim as to asbestos exposure from his father Preston, prior to 1964.

On October 9, 2020, *via* Zoom, a hearing on numerous Motions *in Limine* were argued including, the instant Motion to Continue. Ports America confirmed to the District Court that it understood the March 27, 2020 ruling concerning presenting evidence in the period, 1964-1968, as it relates to take-home exposure.

_____

[7] The judgment was signed on October 16, 2020.

It was at this time, during the hearing, that Henry Pete's counsel advised the District Court that they had just received Preston Pete's Social Security records (the newly discovered evidence); the records were provided to all parties. Henry Pete's counsel raised the issue of whether Preston Pete's Social Security records could be used as evidence to reopen the matter of take-home exposures to include pre-1964.

Ports America expressed their concerns to the District Court that using Preston Pete's Social Security records to reopen pre-1964 exposures, as part of Henry Pete's take-home claims, would be prejudicial. Ports America, along with other defendants, requested a continuance of the trial for the specific purpose of being able to have additional time to prepare a potential defense against accusations relating to "this greater time period"; pre-1964, as the introduction of this newly discovered evidence could substantially affect the scope of the trial and its outcome. Expanding on this, the defendants asserted in defending the take-home claim (and extended period of time; pre-1964) on such short notice, and not having the opportunity to have their experts adjust and/or supplement anticipated opinions and testimony to deal with the new evidence, would be prejudicial.

After a recess, the District Court indicated that Henry Pete had a choice of proceeding without pre-1964 take-home exposures or having the matter continued, if he elected to use his father's Social Security records for that purpose. Henry Pete's counsel asked for clarification as to whether Preston Pete's Social Security records could be used to corroborate Henry Pete's testimony that he and his father had worked together for the defendants during the 1964-1968 time period. The defendants objected arguing that they should be afforded an opportunity to

6

investigate and pursue virile shares against other entities identified in the Preston Pete Social Security records for 1964-1968.

The District Court said that it had no problem with the "sole use" of those records (Preston Pete's Social Security records) "being a substantiation of Mr. [Henry] Pete's testimony ...or a … corroboration … that he, in fact, worked for the named defendants and that he did so while working with his father." The District Court made it clear:

> The Court's[sic] going to go forward Monday, I'm not going to continue the trial. As I indicated before, the only use that those documents could be used for is the '64 to '68 period to substantiate that Mr. Preston Pete actually worked for the particular companies that are listed.

It is reasonable to conclude that if these Social Security records corroborated Henry Pete's testimony about who his father worked for during the 1964-1968, then it was relevant to the issue of take-home claims. One could also extrapolate from this information that simply because there was proof of where Preston Pete worked during that period would not necessarily be pertinent to Henry Pete's direct exposure claim.

As stated above, after argument and evidence was presented at the hearing, the District Court denied Ports America's Motion to Continue and also denied the defendants' Motion for Stay of Proceedings, while the defendants' sought supervisory writ to this Court.[8] Ports America asserts here on appeal that the District Court's ruling denying the Motion to Continue and Request for Stay of Proceedings and allowing the evidence, to wit Preston Pete's Social Security records, to be used during the trial, substantially affected the scope and course of

---

[8] Despite moving for a notice of intent to file for supervisory review, there is no evidence in the record that a supervisory writ on the Motion to Continue and Stay of Proceedings was ever applied for with this Court.

the trial thereby resulting in prejudice to Ports America. We note, that the defendants made various arguments supporting the Motion to Continue, including the assertion that they were surprised and/or ambushed by having to defend the take-home claims for 1964-1968. However, this claim for take-home claims was always part of the case and indeed in Henry Pete's initial Petition for Damages. We can only conclude that the defendants failed to support their assertion that they were surprised or ambushed by the newly discovered evidence. The District Court properly allowed the use of Preston Pete's Social Security records for their anticipated, limited purposes.

Therefore, we find that the District Court did not abuse its discretion in denying the defendants' Motion to Continue and Motion for Stay of Proceedings. Nor, did the District Court err in allowing Preston Pete's Social Security records to be entered into evidence. Further, as discussed above, finding no abuse of discretion in the District Court's ruling denying the defendants' Motion to Continue and Motion for Stay of Proceedings, we pretermit any discussion on issues raised in this appeal concerning the negative impact or collateral effects of the denial of the Motion to Continue Trial.

Secondly, we address the issue of whether there was an insufficiency of evidence to support the jury's conclusion that Preston Pete's exposure to asbestos through his employment with Ports America specifically caused the development of Henry Pete's mesothelioma. Here, the appellant is specifically directing attention to Jury Interrogatory No. 5, wherein the District Court stated in the judgment that the jury found by a preponderance of the evidence that:

> Between 1964 and 1968, Plaintiff, Henry Pete and his father, Preston
> Pete were not exposed to asbestos while employed by Defendants,
> James Flanagan/New Orleans Stevedores, and SSA Gulf Inc./Ryan

Walsh, nor was Plaintiff, Henry Pete exposed to asbestos taken home by his father from this work nor was such exposure a substantial contributing factor in the development of mesothelioma. [See Interrogatory No. 5]

Between 1964 and 1968, Plaintiff Henry Pete and his father, Preston Pete was [sic] exposed to asbestos while employed by Defendants Port America Gulfport Inc./Atlantic & Gulf and Cooper T. Smith Stevedoring Co. Inc., Plaintiff Henry Pete was exposed to asbestos taken home by his father from work, and such exposure was a substantial contributing factor in the development of his mesothelioma. [See Interrogatory No. 5]

La. C.C.P art. 1812 controls the use of a special jury form, a special written finding upon each issue of fact. *See Thomas v. Dep't of Wildlife & Fisheries*, 2018-0869, p. 23 (La. App. 1 Cir. 10/2/19), 289 So.3d 579, 596, *Palumbo v. Shapiro*, 2011-0769, p. 8 (La. App. 4 Cir. 12/14/11), 81 So.3d 923, 928). The applicable statute addressing special jury verdict forms/interrogatories is La. C.C.P. art. 1812(B), which requires a trial judge to inform the parties of the contents of the special verdict form it intends to submit to the jury, in order to allow the parties time to object before the jury retires to deliberate. *See Streeter v. Sears, Roebuck & Co.,* 533 So.2d 54, 59-60 (La. App. 3 Cir. 1988). La. C.C.P. art. 1812(D) essentially directs the court to enter judgment in conformity with the jury's answers to the interrogatories on the special verdict form and the applicable legal principles. Under the provisions of this article, a trial judge is required to submit special verdict forms, which adequately set forth the issues to be decided by the jury. *Lemire v. New Orleans Pub. Servs., Inc.*, 458 So.2d 1308 (La. 1984). If the judge submits a special verdict form, he has a responsibility to submit jury interrogatories "which fairly and reasonably point to the issues which guide the jury in reaching a verdict." *Lewis v. Wal-Mart Stores Inc.*, 546 So.2d 267, 274 (La. App 3 Cir. 1988).

9

Following trial, the District Court informed the parties that it was going to make the jury verdict the judgment of the court. *See* La. C.C.P. art. 1812(D). Ports America asserts that the judgment was rendered improperly as it inferred a finding of liability on the part of Ports America in the jury verdict.

La. C.C.P. art. 1813 specifically applies to a general verdict accompanied by written interrogatories. A jury verdict based on the interrogatories should not be set aside unless the form prevented the jury reaching a legally correct verdict. *Thomas v. Dep't of Wildlife & Fisheries*, 2018-0869, p. 23, 289 So.2d at 597, (citing *Palacios v. La. & Delta R.R., Inc.*, 2005-1168 (La. App. 3 Cir. 5/3/06), 930 So.2d 1086, 1091). La. C.C.P. art. 1972(B) requires that a trial judge instruct the jury on the law applicable to the cause submitted to them. *Danna v. Ritz-Carlton Hotel Co.,*, 2020-0116, p. 11 (La. App. 4 Cir. 3/24/21), ___So.3d___, ____, 2021WL1159726. The trial court is under no obligation to give any specific jury instructions that may be submitted by either party; the court must, however, correctly charge the jury. *Knoten v. Westbrook*, 2014-0892, p. 8 (La. App. 4 Cir. 5/18/16), 193 So.3d 380, 386 (citing *Adams v. Rhodia*, 2007-2110, p. 6 (La. 5/21/08), 983, So.2d 798, 804).

A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider the verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objections. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury. La. C.C.P. art. 1793(C); *See Lavigne v. Allied Shipyard, Inc.*, 2018-0066, p. 18 (La. App. 4 Cir. 1/5/20), 289 So.3d 1088, 1103; *See also Yokum v. Funky 544 Rhythm & Blues Café*, 2016-1142, p. 5 (La. App. 4 Cir. 5/23/18), 248 So.3d 723,

10

731. This rule also applies to jury interrogatories. *Deykin v. Ochsner Clinic Found.*, 2016-488, pp. 5-6, (La. App. 5 Cir. 4/26/17), 2019 So.2d 1234, 1239; *See also Willis v. Ochsner Clinic Found.*, 2013-627, p.13 (La. App. 5 Cir. 4/23/14), 140 So.3d 338, 349. The record does not reflect that the defendant made any timely objection of the record concerning the jury charges or the jury interrogatories.

Here, as a reference and pertinent to this appeal, we replicate Jury Interrogatories Nos. 1-5. In sum, the jury found by a preponderance of the evidence that, Safmarine was negligent in exposing plaintiff to asbestos, that they had care, custody and control over the asbestos cargo, that Henry Pete and his Preston Pete were exposed to asbestos while working on Safmarine vessels between 1964 and 1968, and that Henry Peter was exposed to asbestos taken home by his father from this work; these were found to be substantial contributing factors in his development of mesothelioma. As such, Safmarine was cast for its virile share in the jury verdict and in the District Court's judgment, as were Cooper T. Smith and Ports America.

**JURY INTERROGATORIES**

1) Do you find by a preponderance of evidence that the plaintiff, Henry Pete, was employed as a longshoreman by the following (companies) between 1964 and 1968?

| | |
|---|---|
| James Flanagan/New Orleans Stevedores | YES_NO_ |
| Ports America Gulfport, Inc./Atlantic & Gulf | YES_NO_ |
| SSA Gulf, Inc./Ryan Stevedoring/Ryan Walsh | YES_NO_ |
| Cooper T. Smith Stevedoring Co., Inc. | YES_NO_ |

**For the company (companies) for whom you answered "YES, go to Question#2.**
**For the company (companies) for whom you answered "NO", go to Question #5.**

*Cooper T. Smith was the only company that the Jury checked the "YES" column.*

Therefore, we can conclude from Interrogatory No.1 that the jury was to go forward to Jury Interrogatory No. 5 as it relates to Flanagan, Ports America and SSS Gulf.

> 2) Do you find by a preponderance of the evidence that the plaintiff, Henry Pete, was exposed to and/or handled asbestos while employed with the following company (Companies) between 1964 and 1968?
>
>       James Flanagan/New Orleans Stevedores          YES_NO_
>       Ports America Gulfport, Inc./Atlantic & Gulf    YES_NO_
>       SSA Gulf, Inc./Ryan Stevedoring/Ryan Walsh      YES_NO_
>       Cooper T. Smith Stevedoring Co., Inc.           YES_NO_
>
> **For the company (companies) for whom you answered "YES, go to Question#3.**
> **For the company (companies) for whom you answered "NO", go to Question #5.**

*Cooper T. Smith was the only company that the Jury checked the "YES" column.*

Therefore, we can conclude from Interrogatory No. 2 that the jury was to go forward to Jury Interrogatory No. 5 as it relates to Flanagan, Ports America and SSA Gulf.

> 3) Do you find by a preponderance of the evidence that the following company (companies) was (were) negligent in exposing the plaintiff, Henry Pete, to asbestos and such negligent exposure(s) was (were) a substantial contributing factor in causing Henry Pete's injuries?
>
>       James Flanagan/New Orleans Stevedores          YES_NO_
>       Ports America Gulfport, Inc./Atlantic & Gulf    YES_NO_
>       SSA Gulf, Inc./Ryan Stevedoring/Ryan Walsh      YES_NO_
>       Cooper T. Smith Stevedoring Co., Inc.           YES_NO_
>
> **No matter how you answer this Question, go to question 4.**

*Cooper T. Smith was the only company that the Jury checked the "YES" column.*

> 4) Do you find by a preponderance of the evidence that the following company (companies) had custody, care and control of/over asbestos cargo between 1964 and 1968 and such exposure was a substantial factor in his development of mesothelioma?
>
>       James Flanagan/New Orleans Stevedores          YES_NO_
>       Ports America Gulfport, Inc./Atlantic & Gulf    YES_NO_
>       SSA Gulf, Inc./Ryan Stevedoring/Ryan Walsh      YES_NO_
>       Cooper T. Smith Stevedoring Co., Inc.           YES_NO_
>
> **No matter how you answered this Question, go to Question #5**

*Cooper T. Smith was the only company that the Jury checked the "YES" column.*

5) Do you find by the preponderance of the evidence that the plaintiff Henry Pete, and his father Preston Pete, were exposed to asbestos while employed by any of the following company (companies) between 1964 and 1968, that Henry was exposed to asbestos taken home by his father from this work, and that such exposure of plaintiff was a substantial contributing factor in his development of mesothelioma?

| | |
|---|---|
| James Flanagan/New Orleans Stevedores | YES_NO_ |
| Ports America Gulfport, Inc./Atlantic & Gulf | YES_NO_ |
| SSA Gulf, Inc./Ryan Stevedoring/Ryan Walsh | YES_NO_ |
| Cooper T. Smith Stevedoring Co., Inc. | YES_NO_ |

**No matter how you answered this Question, go to Question #6**

*Ports America and Cooper T. Smith were the only companies that the Jury checked the "YES" column.*

Jury Interrogatories Nos. 3, 4, and 5 deal directly with whether the asbestos exposures were a substantial contributing cause of Henry Pete's mesothelioma. The jury answered yes in Jury Interrogatories Nos. 3 and 4 answered but only to Cooper T. Smith. It was not until No. 5, dealing with Henry Pete's take-home claim that the jury answered yes to both Cooper T. Smith and Ports America.

We observe that the verdict sheet presented direct exposure and take-home exposure as separate matters to be separately considered by directing the jury to consider and answer Jury Interrogatory No. 5 regardless of its answers to Jury Interrogatories Nos. 1-4. Jury Interrogatories Nos. 1-4, were predicated on Henry Pete's direct asbestos exposure while working as a longshoreman at various jobs along the riverfront. Conversely, Jury Interrogatory No. 5 was predicated on Preston Pete's employment, sometimes with Henry Pete, sometimes without, that placed Henry Pete in a unique position to observe his father's activities that ultimately the exposure of Henry Pete to asbestos resulting in his development of mesothelioma.

13

Ports America asserts that Jury Interrogatory No. 5 asked only whether Henry Pete was exposed to asbestos brought home by his father; it did not ask the jury to determine whether Ports America was negligent or strictly liable for that exposure. Moreover, the other Jury Interrogatories, which were specifically directed towards theories of liability and/or breach of duty, were answered in the negative as to Ports America. Conversely, Jury Interrogatory No. 5 found only causation and damages.

On November 4, 2020, Henry Pete's 1964-1968 claim was submitted to the jury, including Jury Interrogatory No. 5. The record reflects that Ports America did not object to this interrogatory, specifically, the omission of fault as an element of Henry Pete's take-home claim. Additionally, Ports America did not tender an interrogatory for the take-home claim, nor did they tender one that included fault, but they did tender an interrogatory that omitted fault concerning the take-home claim.[9] Nonetheless, fault was ultimately included in District Court's jury charge on take-home claims:

> An employer also has a general duty to act reasonable in view of the foreseeable risks of danger to household members of its employees resulting from exposure to asbestos fibers carried home in its employee's clothing, person, or personal effects.

The jury was further charged that to find for the plaintiff on take-home claims, it had to find:

> [T]hat defendants knew or should have known that asbestos on Preston Pete's work clothes would have presented a risk that Plaintiff's secondhand exposure, if any, to the father's work clothes would have presented a risk that this exposure, if any, to his father's work clothes during this time would have resulted in him developing mesothelioma

---

[9] The record reflects that the defendants submitted multiple request/proposed jury charges and Jury Interrogatories.

The omission of fault in Jury Interrogatory No. 5 cannot constitute a fundamental legal error because the jury charge properly included fault as an element of Henry Pete's take-home claim. Here, the jury was charged that fault was an element of Henry Pete's take-home claim. Thus, any alleged error resulting from the omission of fault in Jury Interrogatory No. 5 was cured by the District Court's instructions.

Furthermore, La. C.C.P. art. 1812(A) states that:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless, before the jury retires, he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.

Jury Instructions are reviewed under a manifest error standard of review. *Fireman's Fund Ins. Co. v. R,S, Homes, LLC*, 2019-0621, pp. 3-4 (La. App. 4 Cir. 3/25/20), 294 So.3d 54, 59. "Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law." *Adams v. Rhodia, Inc.*, 2007-2110, p. 6 (La. 5/21/08), 983 So.2d 798, 804. Thus, "the adequacy of the jury instruction[s] must be determined in the light of jury instructions a as whole…." *Id.* at 805. The defendant does not assert that the evidence was insufficient to support a finding of fault as to

15

take-home claims but only that fault was not included in Jury Interrogatory No. 5.

Therefore, we can only conclude that Ports America's assertion that the District Court erred in casting in its judgment where Jury Interrogatory No. 5 did not include a finding of fault is without merit. The defendant failed to object to the form and the jury charge that included fault as an element, the District Court casting the defendant in judgment presumes a finding of fault as a matter of law. Moreover, the defendant did not object to the form of Jury Interrogatory No. 5 nor curative instructions. *See* La. C.C.P. art. 1812(A).

The jury clearly held Ports America liable on the take-home claim. The District Court instructed the jury to consider fault in making their factual determinations. The District Court deemed the jury verdict sufficient to cast Ports America in judgment. Given the totality of the jury instructions and jury interrogatories, there is nothing to suggest that the jury misunderstood the issues before them. Also, the record supports the conclusion that District Court adequately instructed the jury.

The record reflect that on October 16, 2020, Henry Pete, during his trial testimony, described various scenarios between 1964-1968, wherein he remembered working for numerous places along the New Orleans river front/ports with his father and places that he remembered that his father had worked. He described how his father would return home from working with dust and debris on his work clothing, which he occasionally laundered. While Henry Pete was testifying, as to these various scenarios, the defendants objected. They based their objection on their understanding that the District Court had ruled out take-home claims all together, including the period between 1964-1968. Therefore, any

testimony on the issue was precluded. The District Court sustained the objection. Nevertheless, SSA Gulf and Ports America went on to use Preston Pete's Social Security records in cross-examining Henry Pete. Significantly, not only did the defendant use the Social Security records for their own purpose but ultimately the records were offered and admitted into evidence without objection.

On October 17, 2020, the District Court acknowledging a problem with the misperception that it had precluded take-home testimony for 1964-1968 the court stated on the record:

> Let me just say back on Friday, this Friday—the Court is not reversing itself on anything. On Friday, in reviewing the prior judgment from June when my law clerk brought that judgment to my attention— cause it's been so many judgments in this case. But when my law clerk brought that judgment to my attention, I saw that in that judgment it stated that Mr. Henry Pete would be able to deal with take-home exposure as it relates to the time he worked on the riverfront with his father from '64 to '68. My ruling during Mr. Pete's testimony and based on the objection of defense counsel was that Mr. Pete could not testify about these take-home exposures during the time he worked on the riverfront with his father. And I was simply saying to the parties that was an incorrect ruling because the earlier ruling, which was made back in June, was that he would be able to testify about take-home exposures during the time he worked with his father. That was the question Mr. Hibey[10] asked of the witness—When you ride with in the car with your dad, were his clothes dusty and so forth? And that was the objection that was lodged.
> And he does have the opportunity based on that June ruling …it is not a reversal. Based on that June ruling, he did have an opportunity the ask [sic] about the take-home exposures. That was the limit of my conversation of [sic] with the parties on Friday.

On October 21, 2020, Henry Peter returned to testify. During cross-examination the defendants used Preston Pete's Social Security record to question Henry Pete concerning whether he had observed his father working for other companies. Here, Henry Pete now had the benefit of his father's Social security

---

[10] Mr. Hibey is one of Mr. Henry Pete's counsel.

records.  Nevertheless, he was unable to identify any additional companies for which he had worked with his father or which companies he remembered that his father had worked with or around asbestos.

The standard of proof in asbestos cases, developed by Louisiana courts over the years of asbestos litigation, is known as the "substantial factor" test. *Oddo v. Asbestos Corp.,* 2004-0004, p. 11, (La. App. 4 Cir. 8/20/15), 173 So.3d 1192, 1201. "Stated differently, the plaintiff must prove, by a preponderance of the evidence that: (1) his exposure to the defendant's asbestos product was significant and (2) that his exposure caused or was a substantial factor in bringing about his mesothelioma (or other asbestos related disease). *Id.* (citing *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 2010-1551, p. 19 (La App. 1 Cir. 10/4/11), 77 So.3d 360, 372).  Medical Science has proven that a causal relationship between asbestos exposure and mesothelioma above background levels.  Thus, asbestos exposure is a causative factor in producing the disease. *McAskill v. American Marine Holding Company*, 2007-1445, p. 7 (La. App 4th Cir. 3/4/09), 9 So.3d 264, 268.  It is also established that mesothelioma can develop after a fairly short exposure to asbestos, and that every "non-trivial" exposure to asbestos contributes to and constitutes a cause of mesothelioma. *See Rando v. Anco Insulations Inc.*, 2008-1163, p. 35 (La. 5/22/09), 16 So.3d 1065, 1091. The causal link between asbestos exposure and mesothelioma contraction has been demonstrated to such a high degree of probability, while at the same time, few if any other causes have been identified that a universal causal relationship has been recognized: if one is diagnosed as having mesothelioma and that that person was exposed to asbestos, that exposure is recognized to be the cause of the mesothelioma. *Torrejon v. Mobie Oil Co.*, 2003-1426, p. 23 (La. App. 4 Cir. 6/2/04), 876 So.2d 877, 892-893.

The applicable substantive law is Louisiana Tort law. Traditional tort theories apply in evaluating liability in an asbestos case. These tort theories require proof of causation—that the plaintiff was exposed to asbestos for which the defendant is responsible. *Steib v. Lamorak Ins. Co.*, *unpub.*, 2020-0424 p. 9 (La. App. 4 Cir. 2/3/21), ___So.3d___(2021), 2021 WL 503240 (citing *Emory v. Owens-Corp.*, 2002-2144, p. 1 (La. App 1 Cir. 11/9/01), 813 So.2d 441, 45).

Moreover, the applicable standard of review for this Court in the case *sub judice* is a manifestly erroneous/clearly wrong standard.

"A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Stobart v. State through Dep't of Transp. & Dev.*, 671 So.2d 880, 882 (La. 1993) (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). The Louisiana Supreme Court set forth a two-prong test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the district court; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. *Id.* (citing *Mart v.* Hill, 505 So.2d 1120, 1127 (La. 1987)). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* "[W]here there are two permissible views of evidence, the fact-finder's choice cannot be manifestly erroneous of clearly wrong." *Serpas v. Tulane Univ. Hosp. &* Clinic, 2013-1590, 2013-1591, p. 13 (La. App. 4 Cir. 5/14/14), 161 So.3d 726, 736.

Based on the record before us, we find the jury did not err in finding that Preston Pete's exposure to asbestos through his employment with Ports America

was a substantial contributing factor in the development of Henry Pete's mesothelioma.

Accordingly, given all of the testimony and evidence presented to the jury, and finding that there are no incongruences concerning the jury interrogatories, jury instruction and the jury's verdict, we find that there was sufficient evidence to support the judgment. Furthermore, we find that the judgment was not manifestly erroneous nor clearly wrong. There is no merit to the defendants' arguments.

This leads us to the defendants' argument regarding testimony/opinion expressed by Henry Peter's experts.

Essentially, Ports America is arguing that previously *Daubert* qualified experts Dr. Richard Cohen ("Dr. Cohen") and Kenneth Garza ("Mr. Garza") should not have been allowed to testify concerning the effects of take-home exposure and the development of mesothelioma. [11]

The matter previously came to this Court in *Henry Pete v. Ports America Gulport , Inc. & SSA Gulf, Inc.*, 2020-C-0343 (La. App. 4 Cir. 4/10/20), and, *Henry Pete v. Boland Marine and Manufacturing Company, LLC, et al*, 2020-C-0344 (La. App. 4 Cir. 8/13/20), wherein defendants' Motions in *Limine*, concerned *Daubert* qualifications of two of Henry Pete's expert witnesses, Dr. Cohen and Kenneth Garza.

_____

[11] *Daubert v. Merrell Dow Pharms., Inc*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 1116, 1121 (1993). *Daubert* is now codified in La. C.E. art. 702(A), which governs the admissibility of expert testimony as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> > (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (2) The testimony is based on sufficient facts or data;
> > (3) The testimony is the product of reliable principles and methods and;
> > (4) The expert has reliably applied the principles and methods to the facts of the case.

"Under the standards set forth in *Daubert*, and adopted by our Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116, 1122 (La. 1993), the district court is require to perform a "gate keeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relative, but reliable." *Versluis v. Gulf Coast Transit Co.*, 2008-0729, p. 5 (La. App 4 Cir. 7/29/09), 17 So.3d 459, 463 (citing *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795).[12]

In *Henry Pete v. Ports America Gulfport , Inc. & SSA Gulf, Inc.* 2020-0343 (La. App. 4 Cir. 4/10/20), the defendants, including Ports America, sought supervisory writ with this Court seeking review of the District Court's June 23, 2020 ruling denying the defendant's *Daubert* motion to exclude and/or limit Dr. Cohen's expert testimony.[13]  This court denied the writ and affirmed the District Court.

In *Henry Pete v. Boland Marine and Manufacturing Company, LLC, et al*, 2020-0344 (La. App. 4 Cir. 8/13/20), Henry Pete sought supervisory writ with this Court seeking review of the District Court's June 23, 2020 ruling partially granting the defendants' *Motion in Limine* to exclude and/or limit the expert report, opinion, and testimony of Kenneth Garza, Henry Pete's expert qualified in the field of industrial hygiene.

The District Court concluded that Kenneth Garza would be allowed to testify as to general industrial hygiene as it relates to exposure to asbestos based on historical data, but prohibited from testifying as to specific defendant's and exposure, or whether those exposures were above ground.  Kenneth Garza,

---

[13] Dr. Cohen was a practicing specialist in occupational medicine and industrial toxicology for over forty years.  He was also board certified in occupational medicine and general preventative medicine.

qualified as expert in the field of industrial hygiene. This Court reversed that ruling finding that Kenneth Garza's based his opinion on Henry Pete's testimony. Consequently, Kenneth Garza's testimony and the evidence upon which he relied should be weighed by the jury.

A trial court has broad discretion in determining who should or should not be permitted to testify as an expert and whether the expert testimony is admissible, and its judgment with respect to such matters will not be disturbed on appeal unless manifestly erroneous. *Iteld v. Four Corners Consrt., L.P,* 2012-1504, 2012-1505, 2012-1506, p. 25 (La. App. 4 Cir. 6/5/13), 157 So.3d 702, 718.

These arguments goes to the weight of the evidence, as viewed by the jury, the trier of fact. "An expert may provide testimony based on information obtained from others, and the character of the evidence upon which expert bases an opinion affects only the weight to be afforded the expert's conclusion." *Certain Underwriters at Lloyd's London v. United States Steel Corp.*, 2019-1730, p. 3 (La. 1/28/20), 288 So.3d 120, 122 (citing *Lafayette City-Parish Consol. Gov't. v. Person*, 2021-0307, p. 8 (La. 10/16/12), 100 So.3d 293, 298).

Here, in light of the previous ruling of this Court's rulings in supervisory writs in *Henry Pete v. Ports America Gulfport, Inc. & SSA Gulf, Inc.* 2020-0343 and *Henry Pete v. Boland Marine and Mfg. Co., et al,* 2020-0344, we conclude that the defendant failed to present any substantially different evidence at trial. Therefore, we conclude, based on the evidence adduced at trial, that the District Court was not manifestly erroneous nor clearly wrong in allowing Dr. Cohen and Kenneth Garza to testify based on their respective expertise. The jury viewed all of the evidence, including the experts' reports, opinions and testimony and applied

it to the weight of the evidence as reflected by the jury's ultimate verdict. Accordingly, we find no merit to the defendants' argument.

Ports America maintains that the jury's general damage award was excessive, thereby constituting an abuse of discretion. Their argument is scant at best. Essentially, they are arguing that various other cases concerning asbestos/mesothelioma take claims had considerably less general damages awards. As such, Ports America request a remittitur to bring the general damages awarded by the jury in line with the mass of past awards, as the jury's award was disproportionate to same. They suggest that due to the injury sustained by Henry Pete, recovery should lie between $1.5 million and $3.5 million.

Also, Ports America argues that their virile share should be modified. Once again, Ports America argues that the jury finding, based on Jury Interrogatory No. 5 wherein the jury determined that Preston Pete brought home asbestos through his employment with Ports America, which exposed Henry Pete, and that such an exposure was a substantial factor in Henry Pete's development of mesothelioma, was insufficient to cast them in judgment.

Ports America appears to argue that if this Court affirms the general damage award their virile share should be reduce by attributing virile shares to its co-defendants Flanagan and SSA Gulf. Both of these defendants were exonerated from liability for both direct and take-home exposures.

We will not once again address Ports America's argument concerning Jury Interrogatories, and the judgment casting them for their virile shares as those issues are addressed above; therefore, we pretermit any further argument.

On February 1, 2021, the District Court entered judgment in this matter in accordance with the jury verdict. Three defendants, Cooper T. Smith, Safmarine

and Ports America were found to be liable for Henry Pete's mesothelioma from which he ultimately died. The jury assessed general and special damages totaling $10,351,020.00, which included $2,000,000.00 for past and future physical pain and suffering, $2,300,000.00 for past and future mental pain and suffering, $3,000,000.00 past and future physical disability, $2,500,000.00 for past and future loss of enjoyment of life, and $551,020.70 in past medical expenses. The three liable defendants were assigned their virile share.

The standard of review applicable to a general damage award is the abuse of discretion standard. *Coco v. Winston Indus.*, 341 So.2d 332, 345 (La. 1976). The trier of fact is afforded much discretion in assessing the facts rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *Duncan v. Kansas City S. Ry. Co.*, 2000-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682. Following a long line of jurisprudence concerning the appellate role in reviewing general damages, the Louisiana Supreme Court in *Malta v. Herbert S. Hiller Corp.*, 2021-00209, p. 32 (La. 10/10/21), 333 So.3d 384, 407–08, *reh'g denied*, 2021-00209 (La. 1/10/21), noted that:

> The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257, 1260 (La. 1993). Because each case is different, the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. *Id*. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances so as to constitute an abuse of discretion that the appellate court should resort to prior awards in determining what would be an appropriate award for the present case. *Id*. at 1261; *Reck v. Stevens*, 373 So.2d 498, 501 (La. 1979).

"General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty." *Moulds v. La. Stadium and*

*Exposition Dist.*, 2021-0503, p. 31 (La. App. 4 Cir. 3/23/22), 336 So.3d 920, 932;

*Bouquet v. Wal-Mart Stores, Inc.*, 2008-0309, p. 4 (La. 4/4/08), 979 So.2d 456,

458.

In a review of the facts, the test is whether the present award is greatly

disproportionate to the mass of past awards for truly similar injuries. *Theriot v.*

*Allstate Ins. Co*, 625 So.2d 1337, 1340 (La. 1993). In *Scarberry v. Entergy Corp.*,

2013-0214, p. 30 (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 213–14, this Court

noted:

> We have long held true to the following principles: "[b]efore a Court
> of Appeal can disturb an award made by a [fact finder,] the record
> must clearly reveal that the trier of fact abused its discretion in making
> its award. Only after making the finding that the record supports that
> the lower court abused its much discretion can the appellate court
> disturb the award, and then only to the extent of lowering it (or raising
> it) to the highest (or lowest) point which is reasonably within the
> discretion afforded that court." *Wainwright*, [20]00–0492, p. 6, 774
> So.2d at 74.[14] Reasonable persons frequently disagree about the
> measure of damages in a particular case. "It is only when the award is,
> in either direction, beyond that which a reasonable trier of fact could
> assess for the effects of the particular injury to the particular plaintiff
> under the particular circumstances that the appellate court should
> increase or reduce the award." *Youn*, 623 So.2d at 1261.

Moreover, "[t]he facts submitted as evidence must be reviewed by the

appellate court in the light most favorable to the judgment rendered." *Venissat v.*

*St. Paul Fire & Marine Ins. Co.*, 2006-987, p. 17 (La. App. 3 Cir. 8/15/07), 968 So.

2d 1063, 1074 (citing *Theriot v. Allstate Ins. Co.*, 625 So.2d (La. 1993)).

In *Copell v. Arceneaux Ford, Inc.*, 2020-299, p. 12 (La. App. 3 Cir. 6/9/21),

322 So.3d 886 (citing *Reck v. Stevens*, 373 So.2d 498 (La. 1979), our brethren at

the Third Circuit Court of Appeals noted that:

> The initial inquiry is whether the award for the particular
> injuries and their effects under the particular circumstances on the

---

[14]*Wainwright v. Fontenot*, 2000-0492 (La. 10/17/00), 774 So.2d 70.

particular injured person is a clear "abuse of discretion" of the trier of fact. *Gaspard v. LaMaire*, 245 La. 239, 158 So.2d 149 (1963; *Ballard v. National Indem. Co. of Omaha, Neb.*, 246 La. 963, 169 So. 2d 64 (1964); *Lomenick v. Schoeffler*, 250 So. 2d 127 (1967). Only after a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La. 1976); *Bitoun v. Landry*, 302 So. 2d 278 (La. 1974); *Spillers v. Montegomery Ward & Co.*, 294 So.2d 803 (La. 1974).

Ports America has failed to demonstrate that based on the evidence in this case that the general damages awarded to Henry Pete, relevant to the pain and suffering attributable to ultimate his inevitable death from mesothelioma shock the conscience. Thus, we do not find that the jury abused its discretion when it awarded Henry Pete $10.5 million in general damages and decline to disturb the jury's award.

Based on the record, facts, evidence and relevant jurisprudence we affirm the judgment of the District Court.


**AFFIRMED**